**STATE of Missouri, Respondent,**

v.

**William S. ROTH, Appellant.**

**No. KCD 28797.**

Missouri Court of Appeals,
Kansas City District.

April 4, 1977.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., W. Mitchell Elliott, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

SHANGLER, Presiding Judge.

■ The defendant was convicted of murder in the second degree and sentenced to a term of eighteen years according to the verdict of the jury. On this appeal the defendant contends that the comment of the prosecutor in closing argument that the self-defense story asserted at the trial was not told to the police at the time of arrest violated his privilege against self-incrimination. We agree and reverse and remand.

The evidence shows that defendant and one Carlos Savage shared a room at a modest residential hotel. There had been some acrimony between them because a child whom Savage kept for another interfered with the sleep of defendant after his return from work in the early mornings. On the day of the event, the defendant returned to the apartment after a day of work and barroom tippling until the closing hour, and an argument commenced between them about the child. The defendant testified that Savage gained a .22 caliber pistol from a drawer where the defendant kept it, pointed the weapon at him, and in the attempt to wrest it from Savage, the revolver discharged.

Another hotel guest, Ms. Beverly Maynard, heard a loud argument down the hall and the report of a pistol shot as she waited for the elevator. She then saw Savage stagger from the room onto the hallway and fall. The defendant then emerged from the apartment with a gun in his hand.

The defendant attempted to avoid the police, but was arrested in the parking lot which adjoined the hotel and the pistol was recovered where he dropped it. The defendant was informed of his *Miranda* rights at the scene, and when advised of the charge against him remarked: "Oh, did somebody die? He must have had a heart attack." He was then taken to police headquarters where he commented to two police officers: "You can kill a man with a .22 if you know what you're doing." The defendant denied these statements.

The defendant took the stand and testified that he shot Savage in defense of his own life. He admitted a number of prior convictions for crime, and explained that the pistol was a possession from an earlier employment as a sheep tender when the instrument was used to destroy deformed and diseased livestock.

The first part of the prosecution summation went without incident on the issue here. The defendant then followed with an argument that the statements reported by the officers as made by the defendant—that the death must have been from a heart attack and that a .22 caliber pistol could be lethal—were not incriminating but merely the expressions of a confused mind, and that nothing said by the defendant to the three officers admitted a crime. To this the prosecutor replied:

MR. EDWARDS: All right. Let's assume that he's afraid because he's a

convict he wouldn't get a fair shake. But now he already knows somebody has seen him out in the hall, so he's taking the gun and himself away. But he's arrested. Once he's arrested, gentlemen, that logic, if it does exist, of his fear of being a convict vanishes. Nowhere did he tell the policemen then, after he was arrested, when it would work to his benefit—

MR. BLOEMKER: I'm going to object to this as being improper argument.

THE COURT: Overruled.

MR. BLOEMKER: Just a second.

(Counsel approach the bench and the following proceedings were had:)

MR. BLOEMKER: Judge, he's attempting to make a comment upon the fact that the defendant chose not to say anything. Obviously, that's improper.

MR. EDWARDS: It is not improper once the defendant has testified, Your Honor.

MR. BLOEMKER: But he's commenting upon whether the defendant made a statement or not, way back then.

THE COURT: Your objection is overruled.

(The proceedings returned to open court.)

MR. EDWARDS: (Continuing)

So, at the time after he's arrested and that logic vanishes, he did not say a word about self-defense, about Carlos Savage with the gun, about anything, when it would do him some good. This is six months later, gentlemen. Do any of you suppose there's really a Perry Mason and a defendant, a cool defendant, as you've seen this one to be, calm and collected, sitting there, is going to burst out and say, Oh, yeah, I did it, put me away? Nonsense. That's as nonsensical an idea as the story you are asked to believe about self-defense against a non-violent man sitting there reading a Bible and is supposed to make a transition from a Bible to a pistol, instantaneously, with no other response.

■■ It is clear beyond doubt that the prosecution argument was a comment that—contrary to his trial position that self-defense justified the homicide—the defendant made no such claim of exculpation to the police at the time of arrest. The right of a criminal accused to be free from compulsory self-incrimination embraces not only the prerogative to remain silent but also that such silence shall not be allowed to prove guilt. *State v. Elmore,* 467 S.W.2d 915, 917[2] (Mo.1971). This protection begins, not at the trial, but with the inquisition preliminary to prosecution. *Helton v. United States,* 221 F.2d 338, 341[7–9] (5th Cir. 1955). Thus, the silence of the accused when under judicial charge or simply under arrest cannot be shown against him [*State v. Foley,* 144 Mo. 600, 46 S.W. 733, 738 (1898)] because he is under no duty to speak. *State v. Stuard,* 456 S.W.2d 19, 22[3, 4] (Mo. banc 1970).

These principles take an added significance in the perspective of the *Miranda* warnings which now precede arrest by Fifth Amendment mandate. *Miranda v. Arizona,* 384 U.S. 436, 467 et seq., 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). That litany includes advice to an accused [as was given to this defendant] that he may remain silent. It has been held recently by the United States Supreme Court in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) that where the *Miranda* warnings are given, it is fundamentally unfair for a prosecutor to impeach a defendant by cross-examination to show that his exculpatory story was told for the first time at the trial. Such a procedure misuses the Fifth Amendment right of an accused to post-arrest silence and itself violates constitutional due process.

The defendants in *Doyle* testified at the trial that the narcotics prosecutions against them had been framed. On cross-examination they were asked why they had not told the frame-up story to the officers at the time of the arrest. The objections to such questions were overruled by the trial court. This line of inquiry was found to be consti-

tutionally invalid by *Doyle*, 96 S.Ct. l.c. 2244 et seq.:

> The warnings mandated by [*Miranda*], as a prophylactic means of safeguarding Fifth Amendment rights . . . require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights.
>
> Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. . . . Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

. . . . .

We hold that the use for impeachment purposes of petitioner's silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment.

It is evident, therefore, that prosecution impeachment of the post-arrest silence of an accused not only violates the self-incrimination clauses of the Fifth Amendment to the Federal Constitution and Article 1, § 19 of the Missouri Constitution [*Stuart, Elmore, Foley, supra*, and *State v. Butler*, 512 S.W.2d 466 (Mo.App. 1974)], but since *Miranda* also results in denial of constitutional due process. We are compelled to conclude that the closing argument of the prosecutor which referred to the post-arrest silence of the defendant prejudiced the jury verdict of guilt, unless—as the prosecutor contends—the defendant provoked his retaliation. For this contention the State cites *State v. Whiteaker*, 499 S.W.2d 412 (Mo.1973). In that case,

defense counsel argued in his closing argument that the straightforwardness and honesty of his client was demonstrated by giving testimony on the stand when he was not required to do so. In rebuttal the prosecutor sought to refute the trial testimony of the defendant that because of amnesia he had no memory of the event, by emphasizing that the defendant had originally denied knowledge of the shooting to the police, and was bound by that story. The appellate court rejected the defense contention that the prosecutor had no more right to comment on the fact that defendant did testify than on failure to testify, and concluded that the prosecutorial argument was retaliatory and a proper comment on the credibility of defendant.

*Whiteaker* was a direct prosecutorial response to the argument of the defendant that he had voluntarily taken the stand and thereby showed himself to be worthy of belief, by the answer that his trial testimony was inconsistent with his original narration to the police. The case here is altogether different: the defense argument in no wise commented on the silence of the defendant at the time of arrest. Rather, the sense of his argument was that prolonged interrogation of the defendant yielded nothing to incriminate him—including the remark attributed to him concerning the lethal effects of a .22 caliber gunshot. According to the State, the defense emphasis on the lack of incriminatory statements by the defendant invited prosecution response that no exculpatory statements were made by him at that time—including the claim of self-defense. There is no logical relation between the puissance of a .22 caliber revolver to inflict death and the claim of self-defense. Nor is there any contradiction between the trial testimony that the homicide was justified and the closing argument of defense counsel that after he was apprehended the defendant never "told anyone he wanted to kill Carlos Savage or had any sort of malice or held any sort of ill will towards Carlos Savage." To the contrary, this argument and the claim of self-defense—a homicide done without malice— are altogether consistent. Nor is there any

contradiction between a claim of self-defense made for the first time at trial and silence on that claim at the time of arrest. That is because an accused is under no more duty to speak at arrest than at the trial. *State v. Elmore, supra,* l.c. 917.

■■ We reject the contention made by the prosecutor to the trial judge that the defendant waived comment on his pretrial silence by his appearance on the witness stand. An accused does not relinquish the benefits of his silence at a preliminary stage of the prosecution because he later takes the stand to show his innocence. The right given by the constitution against self-incrimination imports a freedom of exercise unburdened by the peril of misuse as a means of impeachment should the one under the claim of its protection ever attempt to show his innocence. *State v. Conway,* 348 Mo. 580, 154 S.W.2d 128, 134[15] (1941); *State v. Stuart, supra,* l.c. 22.

The argument of the prosecutor was neither retaliatory nor invited by the remarks of defense counsel, but rather was a comment on the silence of the defendant at the time of arrest and, as such, allowed the inference that the claim of self-defense was a fabrication.

Accordingly, the judgment is reversed and remanded.

All concur.