STATE of Missouri, Respondent,

v.

James Lewis HARPER, Appellant.

No. 32370.

Missouri Court of Appeals,
Western District.

July 20, 1982.

Allan D. Seidel, Trenton, and Joseph (Sib) Abraham, Jr., Charles Louis Roberts, El Paso, Tex., for appellant.

John Ashcroft, Atty. Gen., Jefferson City, and Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Defendant Harper appeals from a jury conviction for a class C felony under § 570.030, RSMo 1978 for stealing cash and checks worth over $150.00 for which he was sentenced to two years imprisonment. Defendant makes four assignments of error. The judgment of the trial court is affirmed.

Defendant offered no evidence; the facts presented by the state are recounted as follows. On March 23, 1980, $5,000 in checks and $2,500 cash was stolen from the Sav-Mor Service Station in Harrison County, Missouri. A short time before the theft was discovered, defendant and two other young men arrived at the station in a green Chevrolet with a dent in the driver's side and with Oklahoma license plates. They entered the station and asked for a fill-up. One of the men, described as a "little Mexican boy" and later identified as Carlos Martinez, went to the back of the station and was not seen again until the trio left. Defendant and Curtis Lee Davis, the third man, occupied the time of the station's owner, Richard Graham, purchasing several items, one at a time and, at the same time, busied the station's attendant with various questions and work on their car. Defendant and Davis acted in a nervous manner during this time. When Martinez returned from the back of the station he had "both hands in his pockets" and his jacket "bulged out" in front. After one of the three asked the attendant how far it was to Des Moines, they departed, apparently in the opposite direction.

Shortly thereafter, a customer told Graham that the ladies restroom door was locked. Graham then noticed that his back office door was standing ajar even though

it had been locked before the arrival of the young men. He also discovered that in the office, styrofoam ceiling tiles above a file cabinet were missing, and two bank bags containing cash and checks were gone. The office is adjacent to the ladies room. He immediately called the Harrison County Sheriff and authorities in the adjoining county and reported the theft. He described the vehicle and the three occupants and reported the license to be a four digit Oklahoma number beginning with "OS".

Sheriff Leon Riggs spotted the suspects' car traveling south on Interstate 35. He followed the vehicle into a parking lot in Bethany, Missouri, arrested the occupants and took them into custody. Seven hundred thirty dollars was discovered in defendant's billfold and six hundred and seventy five dollars was found in his front trouser pockets. Of the cash in defendant's possession, one of the $20 bills had a mark through the number 7 in the serial number. This bill was later identified by a station employee as having been in the station's receipts that had been stolen. Carlos Martinez' fingerprints were found on the dividers in the ladies restroom of the Sav-Mor station and a shoeprint matching one of Martinez' tennis shoe soles was discovered on a manilla folder on top of the file cabinet in the office.

### I.

Defendant first challenges the sufficiency of the evidence, arguing that the evidence fails to show his affirmative participation in the crime. He maintains that the testimony of the attendant placed him outside the station watching her check the oil when the theft occurred.

■ To establish guilt in a case based on circumstantial evidence, the facts relied upon must be consistent with each other and inconsistent with any reasonable theory of innocence. The state need not demonstrate the impossibility of innocence nor must the circumstances be absolutely conclusive of guilt. The existence of other possible hypotheses does not remove the case from the jury. *State v. Means*, 628

S.W.2d 426, 428 (Mo.App.1982); *State v. Puckett*, 611 S.W.2d 242, 244 (Mo.App.1980).

■ Although the mere presence of defendant at the scene of the crime will not sustain his convictions, other circumstantial evidence was adduced which raised a reasonable inference that defendant was an active participant in the theft and not an "innocent bystander". The record shows that defendant was at the station when the theft occurred; that he engaged the attention of the employee by buying and paying for small items separately, making repeated queries as to prices of liquor and directing the employee to check the oil; that part of the time he positioned himself in front of the office window from where the money was stolen, and was characterized by the state's witnesses as being "nervous" and appeared to be "stalling"; and that he was identified as a companion of Martinez, whose fingerprints and shoeprint were found in the office where the money was stolen. Further, defendant asked the distance to Des Moines, north of Harrison County, yet the three proceeded south on the Interstate. Most damaging was defendant's possession of two bundles of cash totalling $1,405 when arrested only minutes after commission of the crime, out of which the station manager identified a $20 bill as one taken in the theft. (He remembered the notation "780" on the bill because of a small line drawn through the "7").

The evidence herein gives rise to the reasonable inference that defendant actively participated in the service station robbery, and establishes facts and circumstances consistent with defendant's guilt and inconsistent with any plausible hypothesis of innocence. His affirmative participation may legitimately be inferred from the evidence and such an inference will sustain the conviction. *State v. Arnold*, 566 S.W.2d 185 (Mo. banc 1978); *State v. Harris*, 602 S.W.2d 840, 845 (Mo.App.1980).

### II.

Defendant next charges that the following statements by Sheriff Riggs on direct

examination by the prosecutor concerning the money found on him violated his privilege against self-incrimination and right to due process:

Q. Did you ask him [defendant] anything about his currency or anything else concerning the occurrence?

A. They did not want to talk to us.

MR. PARKER: Objection, Your Honor, to the phrase "They didn't want to talk to us."

THE COURT: Sustained.

Q. I wish you would just say what the man said to you.

MR. PARKER: Your Honor, I would move for a mistrial on the basis of the sheriff's testimony.

THE COURT: Request denied.

MR. PARKER: I request that the statement be stricken and the jury so instructed.

THE COURT: It is ordered stricken; the jury will disregard the last statement by the sheriff.

Q. Now, Mr. Sheriff, in response to my question, would you tell the court and jury what Mr. Harper said, if anything, relative to the money?

A. Well, he had stated that they had been to Iowa looking at a college to attend. They had been up to Drake, I believe.

Q. Did you ask him whose money this was?

A. He said it was his money.

Defendant claims that the trial court's refusal to declare a mistrial after the state impermissibly elicited testimony concerning the purported exercise of his right to remain silent constitutes reversible error.

Initially, it should be noted that the sheriff's statement was volunteered and not deliberately elicited by the prosecutor; that defendant's objection to the statement was sustained and the jury told to disregard the statement; and that the prosecutor did not argue or attempt to imply defendant's guilt from this statement at any time during the remainder of the proceedings. Further, as the state points out, the statement "They did not want to talk to us" did not clearly refer to defendant, but could have been in reference to the other two participants.

■ Even assuming the statement referred to defendant, the record indicates that defendant waived his right to remain silent (it is unclear if this was before or after the statement testified to by the sheriff) when he made at least two exculpatory statements to the sheriff—that he had been to Iowa to look at a college and that the money found in his possession belonged to him. Although the law is clear that when a defendant exercises his constitutional right to remain silent his post arrest silence is not admissible against him (*State v. Nolan*, 595 S.W.2d 54, 56 (Mo.App.1980)), this rationale has no application where the defendant elects to waive that right during his custodial arrest and proceed to make statements, as was done here. *State v. Harris*, 547 S.W.2d 473, 475 (Mo. banc 1977); *State v. Trice*, 575 S.W.2d 739, 742 (Mo.App.1978), cert. den., 442 U.S. 945, 99 S.Ct. 2891, 61 L.Ed.2d 316 (1979). This is true whether the statements waiving the right are made before or after the expressed desire to remain silent. *State v. Harris, supra; State v. Taylor*, 472 S.W.2d 395, 401 (Mo.1971) (waiver *after* exercise of right to remain silent); *State v. Starks*, 459 S.W.2d 249, 252–253 (Mo.1970); *State v. Hollis*, 584 S.W.2d 137, 145 (Mo.App.1979) (waiver *before* exercise of right to remain silent). Numerous federal decisions have reached the same result—where an inadvertent remark is made, objection sustained, and no emphasis placed on the comment later by the prosecution. *United States v. Smith*, 635 F.2d 411, 412–414 (5th Cir. 1981); *United States v. Whitaker*, 592 F.2d 826, 830–831 (5th Cir. 1979) (fact situation very similar to case at bar); *United States v. Muscarella*, 585 F.2d 242, 248 (7th Cir. 1978); *United States v. Ivey*, 546 F.2d 139, 144–145 (5th Cir. 1977), cert. den. 431 U.S. 943, 97 S.Ct. 2662, 53 L.Ed.2d 263 (1977).

■ A declaration of a mistrial is a drastic remedy and such action rests largely in the discretion of the trial court which is

in the better position to judge the prejudicial effect and the possibility of its removal by some action short of a mistrial. *State v. O'Neal*, 618 S.W.2d 31, 35 (Mo.1981). The trial court did not abuse its discretion in denying defendant a mistrial.[1]

### III.

Defendant's third point on appeal concerns the fact that the prosecutor argued the issue of punishment in the rebuttal portion of his closing argument. This has generally been held to be error, at least where the subject was not opened up during the defendant's closing argument. *State v. Fair*, 467 S.W.2d 938, 940–942 (Mo. banc 1971); *State v. Wadlow*, 450 S.W.2d 200, 201–202 (Mo.1970); *State v. Peterson*, 423 S.W.2d 825, 831 (Mo.1968). In the instant case, the prosecutor stated as follows:

> What we are really doing here is getting down to brass tacks as to whether or not this man is a thief and he's a thief, he has been proven so, I am asking you to send him to the Penitentiary for seven years—
> MR. PARKER: Objection, Your Honor, improper argument.
> THE COURT: Sustained.
> MR. PARKER: I ask that it be stricken.
> THE COURT: As to the recommendation, sustained.
> So ordered.

After the prosecutor completed his argument, defense counsel requested a mistrial on the basis of the statement quoted above. The court denied the request. Defendant now maintains that the trial court erred in failing to *sua sponte* declare a mistrial at the time of the argument or in failing to sustain his later motion for mistrial. Defendant's claim fails for several reasons.

■ First, this point may only be reviewed as plain error, as defense counsel failed to request a mistrial until after the prosecutor completed his argument. In order for this point to be preserved for review, the remedy of mistrial should have been sought at the time the error occurred. *State v. Shannon*, 413 S.W.2d 198, 199 (Mo. 1967). Second, because defendant failed to include the closing arguments of the defense attorney in the record on appeal, it is impossible to determine whether the prosecutor's argument was made in retaliation to the argument of the defense and, hence, whether it was improper, much less "plain error". *See State v. Peterson, supra*, at 831. It is the responsibility of the appealing party to insure that the record on appeal incorporates the basis for alleged error, and here, defendant has failed to so do. *State v. Jones*, 594 S.W.2d 932, 935 (Mo. 1980).

■ Finally, even assuming that the state's argument was not retaliatory and therefore was improper, no plain error resulted. The control of closing argument is within the sound discretion of the trial court, and that discretion will not be interfered with on appeal unless it clearly has been abused. *State v. Olds*, 603 S.W.2d 501, 511 (Mo. banc 1980). The trial court took immediate action to cure the error. It sustained defendant's objection and ordered the argument stricken. Further, the comment was not repeated. This distinguishes the facts here from those cases relied upon by defendant, and puts the character of the improper argument here subject to the same treatment as in *State v. Woodard*, 499 S.W.2d 553, 560 (Mo.App.1973), which held as follows:

> Inasmuch as defendant obtained all the relief which he sought at the time the objectionable argument occurred, coupled with the fact he failed to move for a mistrial, such stand to preclude any present claim of error regarding the objectionable argument. This ruling should not be construed as condoning the argument. It was clearly improper. The state by arguing punishment for the first time in the final portion of its closing argument went to the very brink of trial disaster.

---

1. *State v. Givan*, 573 S.W.2d 104 (Mo.App. 1978), cited by appellant is inapposite. There, the defendant did *not* elect to answer questions by patrolmen and the court *overruled* the objection (the court repeating the patrolman's solicited response).

If not retaliatory, the prosecutor's remarks should not be commended. It is only because of the facts in this particular case that the comments did not result in a manifest injustice or a miscarriage of justice under Rule 30.20 so that a reversal on this count need not result.

## IV.

For his final point, defendant assigns as error the trial court's failure to suppress the cash and checks found on him at the time of his arrest. In support of this assertion, he urges that the state did not have probable cause to arrest him and, therefore, the warrantless search of his person was illegal.

■ If an arrest is based on probable cause, a warrantless search of the defendant's person may be conducted; *State v. Olds, supra; State v. Wood,* 613 S.W.2d 898, 900 (Mo.App.1981). Probable cause exists when the facts and circumstances within the knowledge of the arresting officers and based upon reasonably trustworthy information are sufficient to warrant a belief by a person of reasonable caution that the person to be arrested has committed the crime for which he has been placed in custody. *State v. Garrett,* 627 S.W.2d 635, 641 (Mo. banc 1982).

When Sheriff Riggs arrested defendant, he was acting on a call received only minutes earlier from the owner of the service station, who described in detail the suspects, (three curly headed boys, one a Mexican wearing a blue and white inscribed cap), the car, (light green four-door Chevrolet with the first two digits of the Oklahoma license plates being "OS" and with a long dent in the driver's side) and the approximate amount of money stolen. Further, the evening before the robbery, Sheriff Riggs had received a report of property damage at a Bethany motel allegedly caused by three "armed" young men matching Graham's description of the three men at the service station. The three men involved in the motel problem were reported to be driving a vehicle with the license number "OS–24".

■ Police are authorized to arrest without a warrant upon facts communicated to them by others as long as those facts describe the criminal activity in sufficient detail to distinguish the accusation from rumor and to allow for independent corroboration. *State v. Chapman,* 627 S.W.2d 597, 598 (Mo.1982); *State v. Upshaw,* 619 S.W.2d 925 (Mo.App.1981). A citizen informant who relates his direct observation of an offense to police may be presumed by the arresting officer to be reliable, and a warrantless arrest stemming from that information is based on probable cause. *State v. Upshaw, supra* at 927. Remembering the broad gulf between the quantum of proof required to establish guilt and that required to establish probable cause, it is clear from these facts that probable cause to arrest defendant existed. Thus, the arrest was lawful and the search incident thereto was permissible. *State v. Masters,* 530 S.W.2d 28, 30 (Mo.App.1975). The trial court properly denied the motion to suppress.

The judgment of the trial court is affirmed.