STATE of Missouri, Respondent,

v.

William R. MABIE, Appellant.

No. WD 39695.

Missouri Court of Appeals,
Western District.

March 28, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1989.

Application to Transfer Denied June 13, 1989.

Lloyd Koelker, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before COVINGTON, Special Judge, P.J., and NUGENT and GAITAN, JJ.

**PER CURIAM.**

Appellant was convicted of forcible rape, in violation of § 566.030, RSMo 1986, and was sentenced to twelve years imprisonment. He now appeals on two grounds. First, appellant claims that, on cross-examination and in its closing argument, the State improperly referred to his failure to volunteer an exculpatory statement following his arrest. Second, he claims that on cross-examination, the State improperly referred to another crime and a prior conviction of appellant.

Reversed and remanded for new trial.

On the night of July 13, 1984, appellant was on a weekend furlough from the Kansas City Honor Center where he was completing a sentence for the sale of a controlled substance. At about 8:30 p.m., appellant went to the "Nitelife Lounge" in Independence, Missouri, where he knew a number of other patrons. Shortly before closing time, he approached the victim, who was standing at the bar, and began talking to her. The two had never met before.

According to appellant, the victim accepted his invitation to dance, and they danced twice before the bar closed, once to a fast song, and once to a slow song. The victim testified that they danced together once to a fast song. Before the bar closed, appellant talked about going to a party later that night, and the victim agreed to go with him.

Appellant and the victim drove to the party in the car that the victim had borrowed from her employer. The victim testified that she let appellant drive because he said that he knew where the party was. Appellant testified that the victim was initially the driver of the car, but that he took over because she was too drunk to drive. The victim, on the other hand, testified that she only drank three beers that night.

The victim testified that instead of driving to the party, appellant drove the car to a wooded area off of Blue Mills Road. She stated that during this trip, she became frightened when they did not appear to be reaching their destination, but appellant kept telling her "We're almost there." When appellant pulled off the road in the

wooded area, she asked him to take her home, and appellant responded by saying that he was going to rape her. According to the victim, appellant then pinned her down by her arms, removed her jeans and underpants, and raped her.

The victim further testified that in order to get away from the wooded area, she told appellant that she needed to go home to pick up her children, and that she needed to use a restroom. She was able to put her jeans back on, and they drove to a Winchell's Donuts on 24 Highway. Outside Winchell's, the victim told appellant to stay in the car and that she would be right back. Once inside the store, the victim told the person behind the counter to call the police, and she locked herself in the restroom.

Two Independence police officers, David Steinhauser and Robert Adams, arrived at Winchell's about one minute after receiving the call. Officer Steinhauser saw appellant sitting behind the wheel of the automobile, and as Steinhauser approached the vehicle, appellant appeared to be hiding something underneath the seat. The police later found the victim's underpants on the floorboard of the driver's side of the automobile.

Upon Officer Steinhauser's arrival at Winchell's, he asked appellant what the problem was, and appellant replied that there was not any problem, that the victim was drunk and she wanted to drive and he would not let her. Steinhauser then escorted appellant into the store where he found the victim still in the restroom. After Steinhauser identified himself as a policeman, the victim came out of the restroom and told Steinhauser that appellant had raped her. Steinhauser testified that the victim was crying and that she was extremely shaken. According to Steinhauser, the victim did not appear intoxicated.

Steinhauser arrested appellant in the store, and the victim was taken to the Medical Center of Independence for an examination. There, she was treated by Dr. David McCray, who testified at trial that her physical examination revealed redness on her upper arms and back, and both sperm and bleeding in her vagina. Dr.

McCray testified that these symptoms were consistent with someone who had been sexually assaulted. Dr. McCray stated that it was possible that the vaginal bleeding could have been caused by consensual intercourse, if that intercourse were extremely active, but added that such an explanation was unlikely. Dr. McCray also noted that at the time of the examination, the victim was upset, crying, appeared to be withdrawn, and had occasional outbursts.

Appellant testified in his own defense at trial, and admitted that he and the victim had had sexual intercourse, but asserted that he did not force himself on her. Appellant also stated that, when the police arrived at the Winchell's parking lot he was carrying a marijuana cigarette which he proceeded to stash in the front seat. He denied trying to hide the victim's underpants as the police approached. Appellant also stated that, after his arrest, he was taken to the Jackson County Sheriff's Department, where he gave an oral and written statement presenting his version of the events.

After the presentation of evidence at trial, a jury found appellant guilty of forcible rape. Appellant was sentenced to a term of twelve years imprisonment to run consecutively with his earlier sentence for the sale of a controlled substance.

As his first point on appeal, appellant claims that on cross-examination and in closing argument, the State improperly referred to his failure to make an exculpatory statement to the police at the time of his arrest. Such references, argues appellant, are in violation of his constitutional right to remain silent, and the reversal of his conviction is therefore required.

Specifically, appellant objects to the following exchange, which occurred when he was cross-examined by the State:

PROSECUTOR: Now, when you're in Winchell's and the police arrest you and they put you—the cuffs on you and they tell you, Mr. Mabie, you're under arrest for rape, well, you must have just laughed and told them rape, what are you talking about?

DEFENSE COUNSEL: Objection to the form of the question. It's compound.

PROSECUTOR: Did you say anything like that?

DEFENSE COUNSEL: It's also irrelevant.

THE COURT: Overruled.

PROSECUTOR: Did you say that? Rape, what are you talking about, man, that's—you know, we just had consen[s]ual sex out here in the woods. You didn't tell the police that, did you?

DEFENDANT: I mentioned to them, I said I don't understand.

PROSECUTOR: You didn't tell them?

DEFENDANT: I didn't understand.

PROSECUTOR: You didn't tell any of those arresting officers anything, not one word about consen[s]ual sex, did you?

DEFENSE COUNSEL: Your Honor, I object to the prosecutor getting in my client's face yelling at him when he knows that the local court rules direct that he either do it from his chair or standing. He and I have both been examining witnesses from behind the bench or behind the table. I think it's improper. I object to him getting up in my client's face and hollering at him. It's improper and he knows it.

THE COURT: All right. Proceed.

PROSECUTOR: You never told them not one single word that that gal and I were out there—

DEFENDANT: I was advised of my rights to remain silent, and I remained silent until I was asked to make a statement.

PROSECUTOR: You waived those rights, didn't you?

DEFENDANT: Yes, sir, after I was asked.

PROSECUTOR: And later on you talked to Detective Kempster about noon the next day, didn't you?

DEFENDANT: Yes, sir.

PROSECUTOR: So you had a lot of time to think about what you had to tell him, right?

DEFENSE COUNSEL: Objection, that's argumentative, Your Honor.

THE COURT: Overruled.

During closing argument, the State again made a point of the fact that appellant made no exculpatory statement for eight hours after his arrest:

PROSECUTOR: ... the defendant is arrested, and they put the cuffs on him and say, hey, you're arrested for rape. And the defendant doesn't say rape, what are you talking about? This is—we went out there and just friends, and we had friendly sex out there. There is no testimony about that, because he didn't say it. And what—wouldn't that be the reasonable thing to do if you're a guy who just went out in the woods and had sex with somebody that was consen[s]ual and some police officer slaps some cuffs on you? You better believe you're going to be telling him this is crazy, I didn't rape anybody.

But he didn't say that, he didn't say consent until 12 p.m. the next day, and you see, he had to say the defense was consent because he couldn't say alibi, because he was arrested right there. He couldn't say it wasn't me because he was right there. So he's got to say it's not con—it's consent.

Appellant concedes that his trial counsel failed to object to the prosecutor's cross-examination and closing argument on the constitutional grounds which are now asserted on appeal. However, we will exercise our discretion and review appellant's claim under the plain error rule, Rule 30.20.

█ The law is clear in this State that the silence of a defendant while under arrest is not admissible against him. *State v. Roth*, 549 S.W.2d 652, 654 (Mo.App.1977); *State v. Benfield*, 522 S.W.2d 830, 834 (Mo. App.1975); *State v. Stuart*, 456 S.W.2d 19, 22 (Mo. banc 1970). The right of a defendant "to be free from compulsory self-incrimination embraces not only the prerogative to remain silent but also that such silence shall not be allowed to prove guilt." *Roth*, 549 S.W.2d at 654.

*Benfield* and *Stuart* both illustrate the severity with which Missouri courts have treated violations of this constitutional

right. In *Stuart,* a case involving the theft of some coins, the issue arose during the testimony of the police officer who found the stolen property in the defendant's apartment. During cross-examination, the officer testified that he had not asked the defendant whether the coins were his. *Stuart,* 456 S.W.2d at 22. Then, one of the jurors requested permission to ask a question, and inquired:

> JUROR: Did either one of these guys claim that money?
>
> WITNESS: Not to my knowledge. To the best of my knowledge, no.

*Id.* The Missouri Supreme Court concluded that the admission of this evidence "resulted in manifest injustice and miscarriage of justice." *Id.* The Court granted relief under the plain error rule because the defendant's attorney had failed to preserve any error.

In *Benfield,* the issue arose during the State's examination of the arresting officer, when the State asked the following questions about the defendant:

> Q. Did he make any statements?
>
> A. No.
>
> Q. At that time?
>
> A. No, he did not.
>
> Q. Did he make any statements to your knowledge at any other time?
>
> A. No.

*Benfield,* 522 S.W.2d at 834. The *Benfield* court held that this exchange was sufficiently prejudicial to require a mistrial. Furthermore, the court added that "[h]ad there been no objection, the result would have been the same." *Id.* at 835.

█ In determining whether a reversal is required because of references to a defendant's post-arrest silence, it is appropriate to consider whether the offending testimony was purposefully elicited by the prosecutor, whether the prosecutor pursued the subject further, and the extent to which the prosecutor attempted to draw attention to the fact of the defendant's post-arrest silence. *State v. Mitchell,* 693 S.W.2d 155, 161 (Mo.App.1985).

█ Applying these criteria to the case at bar, we note that the prosecutor did purposefully elicit testimony as to appellant's post-arrest silence, and that he then proceeded to forcefully draw attention to appellant's post-arrest silence during his closing argument. We also note that, standing alone, references to appellant's post-arrest silence during closing argument can merit reversal. *Roth,* 549 S.W.2d at 655. Thus, compared to the prosecutor's remarks in this case, the testimony which merited reversal in *Stuart* and *Benfield* seems somewhat tame.

█ In its brief, the State offers three main arguments against reversing appellant's conviction under the rule of *Stuart.* First, the State argues that appellant waived his right to remain silent when he made statements to the police some eight hours after his arrest. Therefore, the State concludes that the rule which prohibits the State from referring to a defendant's post-arrest silence does not apply to appellant.

In support of this argument, the State cites a number of cases which hold that where a defendant waives his right to silence and makes a statement to police, the State may then cross-examine him about the subject matter of that statement, including gaps or inconsistencies about which the defendant has kept silent. However, the State has interpreted these cases to mean that once a defendant makes a statement to the police, the State is free to draw attention to the fact that before making his statement, the defendant chose to remain silent.

A review of the cases cited by the State will help to clarify this distinction. In *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), the defendant was interviewed after his arrest and told the police that he stole an automobile from a particular location. Later, at trial, he gave a different account of the theft, asserting that he took the car from a different location. On cross-examination, the State asked him why he did not mention this new location during his post-arrest interview with the police. The Court ruled that the cross-examination did not amount to an improper reference to the defendant's

post-arrest silence. In so holding, the Court noted that "[t]he questions were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement." *Id.* at 409, 100 S.Ct. at 2182. As the Court observed, "[e]ach of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version." *Id.* However, this does not mean that the State can refer to the fact that before making any statement, the defendant chose to remain silent altogether.

The next case cited by the State is *State v. Klaus*, 730 S.W.2d 571 (Mo.App.1987). In that case, the defendant made an oral statement after her arrest for the murder of her husband, in which she claimed that the death of her husband was accidental. At trial, she gave a different account of the death, claiming self-defense. During closing argument, the prosecutor made the following remarks about this later version of events: "This defense, whole defense is fabricated. At the time she was arrested she didn't tell any of the officers anything about abuse or self-defense, or 'I had to do it,' or anything like that." *Id.* at 579. The court held that the prosecutor's remarks were not an improper reference to the defendant's post-arrest silence, but were a comment on the existence of conflicting statements by the defendant. *Id.* Citing *Anderson*, the court in *Klaus*, held that, where a "defendant answers questions or makes a statement while in custody, the right to remain silent and not have the state comment on that silence is waived *as to the subject matter of those statements.*" *Id.* (quoting *State v. Crow*, 728 S.W.2d 229 (Mo.App.1987)) (emphasis added). In saying that the State may comment on a defendant's silence, the court is obviously using the term "silence" in the same limited sense as the *Anderson* decision—namely, that "[e]ach of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version." *Anderson*, 447 U.S. at 409, 100 S.Ct. at 2182. The *Klaus* decision clearly does not mean that the State can refer to the fact that before

making any statement, the defendant chose to remain silent altogether.

The next case cited by the State is *State v. Crow*, 728 S.W.2d 229 (Mo.App.1987). In *Crow*, the court cites the same general principles of law as *Klaus*, but found that in the case before it, the State had improperly referred to the defendant's post-arrest silence, and the court reversed the defendant's conviction. Thus, this case adds nothing to help the State's argument at bar.

The next case relied on by the State is *State v. Frentzel*, 717 S.W.2d 862 (Mo.App. 1986). In that case, the defendant was charged with possession of burglar's tools. After his arrest, the defendant was asked where he got the money, liquor, and tools which were found in his vehicle. In response, the defendant explained the money and liquor, but failed to explain the tools. During his opening argument, the State referred to the defendant's failure to explain the tools, and the court concluded that this was a fair subject of comment by the prosecutor. Essentially, what *Frentzel* holds is that when a defendant waives his right to post-arrest silence and answers questions posed by the police, the State can legitimately draw attention to any gaps in the defendant's story. This case does not say that the State can refer to the silence which preceded the defendant's making any statement at all.

The last case cited by the State is *State v. Harper*, 637 S.W.2d 342 (Mo.App.1982). In this case, the defendant was arrested for stealing cash and checks from a gas station. On direct examination, the prosecutor asked the arresting officer about cash that was found on the defendant's person when he and two companions were arrested:

Q. Did you ask him [defendant] anything about his currency or anything else concerning the occurrence?

A. They did not want to talk to us.

*Id.* at 345. As the preceding dialogue indicates, in *Harper*, the prosecutor did refer to the fact that the defendant chose to remain silent after his arrest. However, the court felt that because of the presence

of certain ameliorating circumstances in that case, a mistrial was not required. Specifically, the court pointed to the following factors which made the drastic remedy of a mistrial unnecessary: (1) the witness' statement was volunteered and not deliberately elicited by the prosecutor; (2) the defendant's objection to the statement was sustained and the jury was told to disregard the statement; and (3) the prosecutor did not argue or attempt to imply defendant's guilt from this statement at any time during the remainder of the proceedings. *Id.* Furthermore, noted the court, "the statement '[t]hey did not want to talk to us' did not clearly refer to the defendant, but could have been in reference to the other two participants." *Id.*

Obviously, these ameliorating circumstances were not present in the case at bar. Here, the prosecutor purposefully elicited the references to appellant's post-arrest silence. Also, no attempt was made to minimize the impact of those references. On the contrary, during closing argument, the prosecutor pointedly referred to appellant's silence as indicative of his guilt.

■ In its second main argument against reversing appellant's conviction under the rule of *Stuart*, the State claims that, even if the prosecutor was initially prohibited from referring to appellant's post-arrest silence, the appellant opened the door to such references by introducing evidence to show that he cooperated with the police after his arrest, and that he voluntarily gave an oral and a written statement at the sheriff's office. The State argues that since appellant himself brought up the subject of his post-arrest behavior, he cannot now complain that the State elicited further details of that behavior, including the post-arrest silence of appellant.

In support of this argument, the State cites a number of cases which hold that a defendant cannot complain about the state inquiring into matters first brought into a case by defendant's own questions. *State v. Jordan*, 646 S.W.2d 747, 750 (Mo. banc 1983) (court allows admission of prior consistent statements); *State v. Lue*, 598 S.W.2d 133, 138 (Mo. banc 1980) (court allows cross-examination beyond scope of direct examination); *State v. Matha*, 446 S.W.2d 829, 832 (Mo.1969) (state allows evidence of a separate crime); *State v. Holmes*, 419 S.W.2d 15, 17 (Mo.1967) (evidence admitted despite objection that it was irrelevant and prejudicial).

According to the cases cited by the State, the prosecutor's references to appellant's post-arrest silence would be proper only if one of the following conditions were met: (1) appellant was the first party to bring up the specific subject of appellant's post-arrest silence; or (2) the State brought up the subject of appellant's post-arrest silence in order *to explain or clarify* the broad subject which appellant did bring up, namely, his post-arrest behavior. Neither of these conditions were met in the case at bar. It was the State that first alluded to appellant's post-arrest silence with the express purpose of showing that an innocent person would not have remained quiet. This went far beyond clarifying the matter introduced by appellant, and was instead an obvious attempt to use appellant's silence to show he was guilty.

In its third main argument against reversing appellant's conviction under the rule of *Stuart*, the State claims that the case at bar is controlled by *State v. Mandina*, 541 S.W.2d 716 (Mo.App.1976), which upheld a conviction under similar circumstances. In *Mandina*, the prosecutor elicited testimony from police officers that the defendant, when arrested, made no statement. However, the court refused to reverse the case under the rule of *Stuart* based on the following rationale:

Defendant's counsel not only did not object when the prosecuting attorney first elicited this fact, but in cross-examining Officer Braxton defendant's counsel joined with the prosecuting attorney in bringing out the fact that defendant made no statement at the time of arrest. As indicated above it is reasonable to conclude that as a part of his trial strategy [defendant's counsel] purposely chose not to object to this testimony but instead desired that it be brought to light. Cf. *State v. Yager*, 416 S.W.2d 170, 172

(Mo.1967). Having thus sought to obtain a strategic advantage appellant may not now invoke the rule of *State v. Stuart,* 456 S.W.2d 19 (Mo. banc 1970), a burglary and stealing case on which appellant relies.

*Id.* at 719.

The State argues that *Mandina* controls the case at bar. However, the factual circumstances which led the *Mandina* court to conclude that defendant had waived the rule of *Stuart* are not present in the case under review here. In *Mandina,* the defendant's counsel made no objection to testimony which referred to the defendant's post-arrest silence. Then, defendant's counsel proceeded to join the prosecuting attorney in eliciting further references to such silence. This behavior led the court to conclude that, as a matter of trial strategy, the defendant's attorney wished to focus attention on the defendant's post-arrest silence. *Id.*

The same conclusion cannot be drawn in the case at bar. Appellant's counsel made numerous objections to the prosecutor's interrogation of appellant about his post-arrest silence, and although those objections were not on the same grounds as are now asserted on appeal, nevertheless the objections do not indicate any desire to bring such evidence to light.

Furthermore, the record does not show that, as a matter of trial strategy, appellant's counsel joined the prosecutor in eliciting testimony of appellant's post-arrest silence. On the contrary, the trial strategy of appellant's counsel was to show that appellant cooperated with the police on his arrest, and that he voluntarily gave statements at the sheriff's office. The prosecutor chose to counter this strategy through improper references to appellant's post-arrest silence. Now the State is arguing that this sequence of events somehow means that appellant's counsel participated with the State in the State's improper references to appellant's post-arrest silence. Such an interpretation is a misreading of the trial transcript.

Finally, we find that, during trial, the State improperly referred to appellant's post-arrest silence, and that his conduct merits reversal of appellant's conviction under the plain error rule. Our disposition of appellant's first point on appeal makes it unnecessary for us to consider appellant's second point on appeal.

Appellant's conviction is reversed and this case is remanded for a new trial.