**STATE of Missouri, Respondent,**

v.

**John Roland FLYNN, Appellant.**

No. 19058.

Missouri Court of Appeals,
Southern District,
Division One.

May 19, 1994.

Ellen H. Flottman, Office of State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Judge.

An Oregon County jury convicted John Roland Flynn (Appellant) of cocaine possession, in violation of § 195.202.[1] He was sentenced to five years in prison and ordered to pay a $1,000 fine. He appeals, raising three points.

In his first point, he claims that the State improperly introduced and referred to evidence that he failed to volunteer an exculpatory statement following his arrest. Finding this point meritorious, we need not discuss the remaining points.

On December 28, 1991, Thayer Police Chief Gene Hatman and Officer George Maness were patrolling the City of Thayer. After observing the driver of a vehicle several times fail to signal before making turns, they stopped the vehicle. Maness walked to the driver's side of the vehicle, and Hatman approached the passenger side.

Both Maness and Hatman noticed that a young man sitting in the passenger seat had a beer can in his lap. The young man (later identified as Appellant's son, Ricky Flynn) said that he was 18 years old and that Appellant had given him the beer. Hatman immediately arrested the youth for possession of intoxicating liquors and escorted him to the patrol car.

In the meantime, Maness began placing Appellant under arrest for furnishing intoxicants to a minor. In the process, Appellant reached into his right front pocket. Fearing that Appellant might be reaching for a gun, Maness struggled with him and called to Hatman for assistance. During the struggle, Appellant removed a white object from his pocket and threw it. After helping Maness subdue Appellant, Hatman retrieved the object, a vial containing what appeared to be cocaine. Maness read the *Miranda* warnings to Appellant. Both officers then escorted Appellant to the police station, where he was once more advised of his rights.

---

1. Statutory references are to RSMo Cum.Supp. 1992.

At trial, the State presented the testimony of both Maness and Hatman concerning these events. It also offered the testimony of a chemist who analyzed the contents of the vial and determined that the substance was, indeed, cocaine.

Appellant presented evidence at trial and testified in his own behalf. The crux of his defense was that, the night before his arrest, he took the vial of cocaine away from a woman he was dating at the time. He said he was considering reporting the matter to law enforcement officials. At the very least, he claimed, he intended to give the cocaine to a law enforcement official he knew in Arkansas (the state where he was living). He also claimed that he had worked for the Drug Enforcement Agency in the past and that in 1990 he had entered into an agreement to work undercover. He and his son testified that Appellant had placed the vial in his car but forgot about it until it rolled from under his seat some time before his arrest.

In his first point on appeal, Appellant contends that, during direct examination and in closing argument, the State improperly focused attention on Appellant's failure to make an exculpatory statement to the police after his arrest. By doing so, he argues, the State violated his constitutional right to remain silent, with the result that his conviction must be reversed.

Appellant objects, first, to the following exchange during the State's direct examination of Officer Hatman:

PROSECUTOR: Now once [Appellant] had been arrested, did you all take him to the police station?

HATMAN: Yeah. I think George [Maness] read him his rights, and then we took him to the police station and read 'em to him again down there because it was dark up there.

PROSECUTOR: Did he tell you where he got this cocaine?

HATMAN: No.

PROSECUTOR: Did he say anything about . . .

DEFENSE COUNSEL: Your Honor, again I'm gonna object because the defendant has no reason or any reason to state anything to the police.

THE COURT: Overruled.

PROSECUTOR: Did he say anything about working undercover at that time?

HATMAN: No sir.[2]

Later, during closing argument, the prosecutor emphasized that following his arrest Appellant never mentioned where he obtained the cocaine or that he had worked undercover. In summarizing the evidence before the jury, the prosecutor said:

[Officer Maness and Chief Hatman] stopped the vehicle. When they went to arrest Mr. Flynn, he dove into his pocket. He didn't say, "Officer, I've got a story I want to tell you of a substance I have in my pocket." He didn't do that. He reached in there and he thought that he could throw it away and they couldn't find it.

So, I think his story is a little incredible. He doesn't deny that he had it. He was caught dead right in his tracks. So, he had to come up with a different story. He can't say, "No, it isn't mine. I didn't have . . ."

At this point, defense counsel objected, claiming that the prosecutor's statements were speculative and inflammatory and that they implied that Appellant "came up with a story here." The trial court overruled the objection.

The prosecutor then continued his closing argument, during which the following exchange occurred:

PROSECUTOR: You heard the evidence. You heard the officers. You heard Mr. Flynn and his son. If, in fact, Mr. Flynn, if the story was the way he said, even if he didn't tell the officers out there where he was arrested, once he was in the police station and knew he was being arrested for possession of cocaine, I would have said, "Hey, I took this from my girlfriend. I'm tryin' to do her a favor."

---

2. We note that prior to its direct examination of Hatman, the State asked Chief Maness similar questions and received similar answers. Defense counsel made no objection during that questioning.

DEFENSE COUNSEL: Your Honor, I . . .

PROSECUTOR: "Go talk to her."

DEFENSE COUNSEL: He's arguing evidence. There was no evidence of this in the . . .

THE COURT: Well, stick to the evidence, Mr. Caskey [the prosecutor].

Appellant acknowledges that he did not properly preserve for review the issue of the State's references to his failure to make an exculpatory statement after his arrest. He therefore requests review under the plain error standard of Rule 30.20.[3] In pertinent part, that rule provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

■ When an issue has not been properly preserved for review, this Court considers plain error affecting substantial rights only when there is a strong, clear showing that manifest injustice or a miscarriage of justice will result if relief is not given. *State v. McGee*, 848 S.W.2d 512, 513 (Mo.App. 1993). In this case, we exercise our discretion and review Appellant's constitutional claim under the plain error standard. *State v. Mabie*, 770 S.W.2d 331, 334 (Mo.App.1989).

■ The law in Missouri is clear that a defendant's post-arrest silence is not admissible against him. *State v. Stuart*, 456 S.W.2d 19, 22 (Mo. banc 1970); *Mabie*, 770 S.W.2d at 334; *State v. Benfield*, 522 S.W.2d 830, 834 (Mo.App.1975). A defendant's right "to be free from compulsory self-incrimination embraces not only the prerogative to remain silent but also that such silence shall not be allowed to prove guilt." *State v. Roth*, 549 S.W.2d 652, 654 (Mo.App.1977). The State may not use post-arrest silence either as affirmative proof of the defendant's guilt or to impeach his testimony. *State v. Mathenia*, 702 S.W.2d 840, 842 (Mo. banc 1986), *cert. denied*, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986).

■ In particular, the State may not introduce evidence or comment in argument re-

garding a defendant's failure to volunteer an exculpatory statement following his arrest. *State v. Leonard*, 606 S.W.2d 403, 407 (Mo. App.1980). Standing alone, a prosecutor's references during closing argument to a defendant's post-arrest silence can merit reversal. *Mabie*, 770 S.W.2d at 335; *Roth*, 549 S.W.2d at 655.

■ The State contends that under the facts of this case the foregoing principles do not apply. Relying on *State v. Howell*, 838 S.W.2d 158 (Mo.App.1992) and *State v. Starks*, 459 S.W.2d 249 (Mo.1970), it argues that, unless a defendant's post-arrest silence is in the face of an accusation, a prosecutor may present evidence of or comment on that silence. This argument, based on a mistaken reading of *Howell* and *Starks*, has no merit.

In *Howell*, this Court made clear that silence in the face of an accusation is not the only circumstance in which a defendant's post-arrest silence must be protected. Citing *State v. Stuart*, 456 S.W.2d at 22, we noted that the right to remain silent must also be protected when an individual under arrest was merely confronted with incriminating facts, without being questioned about or accused of anything. *Howell*, 838 S.W.2d at 162–63.

In *Stuart*, police officers arrested the defendant and his companion for burglary and stealing. Incident to that arrest, the officers searched the defendant's room (where the arrest was made) and found some coins that were later identified as stolen. At trial, following direct and cross-examination of one of the arresting officers, the trial court allowed a juror to ask the officer the following question: "Did either one of these guys claim that money?" The officer responded, "Not to my knowledge. To the best of my knowledge, no."

Appealing on the basis of plain error, the defendant in *Stuart* argued that the juror's question and the officer's answer violated his right not to incriminate himself. Our Supreme Court noted that in previous cases the rule against referring to a defendant's post-arrest silence had been invoked "where the accused was asked about the alleged crime or

---

**3.** Rule references are to Missouri Rules of Court (1994).

where someone made a statement about the alleged crime in the presence of the accused." 456 S.W.2d at 22. In *Stuart*, however, no one had made any kind of statement in the defendant's presence. As the court explained:

> In the instant case no question was asked of the defendant or statement made in his presence. Here, by his silence, he failed merely to deny or explain his possession of the property by claiming it as his own when he had an opportunity to do so while under arrest.

*Id.* Despite the fact that no one had questioned or accused the defendant, the court held "that an accused's failure to volunteer an exculpatory statement is not admissible as an admission" and "that it may not be shown that by his silence he failed to deny or explain while under arrest an incriminating fact as to which no question was asked." *Id.*

Subsequent to the holding in *Stuart*, this Court decided the case of *State v. Benfield*, 522 S.W.2d 830 (Mo.App.1975). The facts surrounding the arrest in *Benfield* were very similar to those in *Stuart*. At trial the following exchange took place between the prosecutor and one of the arresting officers.

> Q  In the process of this investigation did anyone advise [defendant] of his constitutional rights?
> A  Yes, I did.
> Q  Did he make any statements?
> A  No.
> Q  At that time?  A No, he did not.
> Q  Did he make any statements to your knowledge at any other time?  A No.

In light of the holding in *Stuart*, we concluded that admission of this testimony amounted to plain error and required the declaration of a mistrial. *Id.* at 835.

The facts in *Stuart* and *Benfield* (and the instant case) are markedly different from those in *Howell* and *Starks*, upon which the State relies. In *Howell*, when the defendant was put under arrest, no one in his presence made any kind of accusatory statement that called for an admission or a denial. More-

over, the defendant was confronted with no facts that required a denial or an explanation or that might have incriminated him if he remained silent. A police officer simply arrested him and, following the *Miranda* warnings, both the officer and the defendant fell silent.

When the prosecutor in *Howell* questioned the officer at trial, he asked if the defendant made any statement after being advised of his *Miranda* rights. "No, sir," was all the officer said. The prosecutor made no other reference to the defendant's post-arrest silence. Under those circumstances, this Court concluded that "no inference of guilt of the crime could reasonably have been drawn from the prosecutor's question to officer Fowler or Fowler's answer." *Howell*, 838 S.W.2d at 163.

Similarly, in *Starks* no one accused the defendant of a crime, and the defendant was confronted with no incriminating facts. As in *Howell*, the court in *Starks* concluded that no inference of guilt could reasonably have been drawn from the officer's statement at trial. *Starks*, 459 S.W.2d at 252–53. The arresting officer merely testified that, following the arrest, the defendant made a few statements unrelated to the crime charged and then said nothing more.

In the instant case, by contrast, as Appellant was being arrested he was undoubtedly confronted with an incriminatory fact: the vial filled with cocaine[4]. And later, at the police station, he was explicitly charged with (i.e., accused of) cocaine possession. During his direct examination of the arresting officers, during his cross-examination of Appellant, and especially during his closing argument, the prosecutor drew attention to both these incidents. As mentioned already, his closing argument included the following statement:

> "[Appellant] didn't say, 'Officer, I've got a story I want to tell you of a substance I have in my pocket.' He didn't do that.... So, I think his story is a little incredible.... If, in fact, Mr. Flynn, if the story

4. The State's witnesses at trial identified the substance as cocaine. More importantly, Officer Hatman testified that, when he recovered the vial after Appellant threw it, he thought it contained cocaine.

was the way he said, even if he didn't tell the officers out there where he was arrested, once he was in the police station and knew he was being arrested for possession of cocaine, I would have said, 'Hey, I took this from my girlfriend. I'm tryin' to do her a favor.'"

Clearly, the prosecutor's references to Appellant's post-arrest silence were intended to draw an "inference of guilt of the crime." *Howell*, 838 S.W.2d at 163.

We note that this is not a case in which "ameliorating circumstances" obviate the need for a drastic remedy, such as reversal. *See Mabie*, 770 S.W.2d at 336–37 (citing *State v. Harper*, 637 S.W.2d 342 (Mo.App.1982)). Here, the witnesses did not voluntarily make their statements about Appellant's silence— the prosecutor deliberately elicited those statements; the jury was never instructed to disregard the statements; and the prosecutor later attempted to imply defendant's guilt based on those statements. *Mabie*, 770 S.W.2d at 337.

An argument can be made, of course, that the State's references to Appellant's post-arrest silence represented only an attempt to *explain or clarify* a subject that Appellant himself first mentioned. That subject was the failure of Officer Hatman and Chief Maness to investigate where Appellant got the cocaine and whether Appellant was working undercover. The first mention of this alleged failure to investigate came during defense counsel's cross-examination of Maness:

DEFENSE COUNSEL: Did you ever talk to any of the Arkansas State Police about this incident?

MANESS: Not to my recollection.

DEFENSE COUNSEL: Did you ever ask the defendant where he got the cocaine from?

MANESS: No sir, I didn't.

DEFENSE COUNSEL: Did you ever talk to Teresa Gail Brown (Appellant's girlfriend) concerning this incident?

MANESS: If I did I don't recollect it.

. . . .

DEFENSE COUNSEL: Mr. Maness, do you know anything—did you investigate whether or not Mr. Flynn was working undercover or not?

MANESS: No sir.

DEFENSE COUNSEL: In fact, Mr. Maness, you did absolutely no other investigation in this case. Would that be a correct statement?

MANESS: Yes sir.

The weakness in arguing here that the State focused attention on Appellant's post-arrest silence only to explain or clarify a subject Appellant raised himself is the same weakness the court in *Mabie* pointed out. To paraphrase that court, although it was Appellant who brought up the broad subject of an alleged failure to investigate thoroughly, "[i]t was the State that first alluded to appellant's post-arrest silence with the express purpose of showing that an innocent person would not have remained quiet." 770 S.W.2d at 337. This strategy by the State "went far beyond clarifying the matter introduced by appellant, and was instead an obvious attempt to use appellant's silence to show he was guilty." *Id.; see also Roth*, 549 S.W.2d at 655.

Appellant in this case presented an explanation for his possession of the vial of cocaine. By its verdict, the jury rejected that explanation. Although that explanation "may tax credulity," the State had no right to comment on Appellant's exercise of his constitutional right to remain silent. *State v. Richardson*, 724 S.W.2d 311, 313 (Mo.App. 1987).

We therefore hold that the State's references to Appellant's post-arrest silence merit reversal of Appellant's conviction under the plain error rule.

Appellant's conviction is reversed and this case is remanded for a new trial.

PARRISH, C.J., and SHRUM, J., concur.