STATE of Missouri, Plaintiff–Appellant,

v.

Bruce L. TALBERT, Defendant–
Respondent.

No. 18864.

Missouri Court of Appeals,
Southern District,
Division Two.

March 31, 1994.

Thomas E. Mountjoy, Pros. Atty., Pat J. Merriman, Asst. Pros. Atty., Greene County, Springfield; for plaintiff-appellant.

Gary M. Wilson, Springfield, for defendant-respondent.

PER CURIAM:

This is an appeal by the State from the trial court's order suppressing evidence. In the underlying criminal case, Defendant was charged with a class C felony of possession of more than 35 grams of marijuana under § 195.202, RSMo Cum.Supp.1989.

The facts were developed at a hearing on Defendant's motion to suppress. The evidence consisted of the testimony of Carl Hicks (Hicks), a federal Drug Enforcement Administration agent, and Detective Dan Sprader (Sprader) of the Springfield Police Department.[1] According to their testimony, they were working a drug enforcement detail at the Greyhound bus terminal in Springfield on November 17, 1992, watching for possible drug couriers. Defendant was a passenger on an eastbound bus which arrived at the bus terminal at 3:40 p.m. He disembarked the bus along with other passengers, but he caught the attention of Officer Hicks because: (1) he had about a one day's growth of beard which the officer took to mean that he had been on the bus for a while; and (2) he carried a "large" travel bag (approximately 24 inches long by 12 inches wide by 12 inches tall) off the bus and kept it with him, which the officer considered to be unusual because most passengers leave their belongings on the bus. Defendant first walked into the terminal building carrying the bag, but later returned to stand in front of the bus with the bag at his feet.

---

1. Defendant did not testify or present evidence at the hearing.

Officer Hicks had a "hunch" that Defendant might be carrying drugs but admitted that he did not have an articulable reasonable suspicion of criminal activity. According to Hicks, Defendant agreed to talk with him after he introduced himself as a police officer and displayed his badge. In response to Hicks' questions, Defendant said that he had boarded the bus in Mesa, Arizona and was going to Chicago; [2] he had one suitcase on the bus in addition to the carry-on which he had with him; and he produced his bus ticket and identification which were returned after being examined by Hicks. According to Officer Sprader, at about the same time they also obtained Defendant's claim check for his suitcase. Sprader took the claim check to the luggage area of the bus, leaving Defendant with Hicks. According to Hicks, he then told Defendant he was a drug agent watching for drugs coming through the bus station and asked if he could look in the travel bag for drugs. Defendant said that he could do so, opened the travel bag, and shuffled some of the contents around. Hicks, however, believed Defendant was concealing something in the bag and asked if he could look himself. After Defendant agreed, Hicks found in excess of one pound of marijuana and placed Defendant under arrest. According to Hicks, one to two minutes expired from the time he first approached Defendant until the marijuana was found.

Our review of the trial court's ruling by which it sustained Defendant's motion to suppress is limited to a determination of whether the evidence was sufficient to support the trial court's finding in light of all the circumstances and the total atmosphere of the case. *State v. Villa-Perez,* 835 S.W.2d 897, 902 (Mo. banc 1992). The facts and the reasonable inferences arising therefrom are to be viewed in the light most favorable to the trial court's ruling. *State v. Blair,* 691 S.W.2d 259, 260 (Mo. banc 1985). We are also mindful of the fact that we must defer to the trial court concerning the credibility of witnesses and the weight to be given the evidence. *State v. Villa-Perez,* 835 S.W.2d at 902; *State v. Milliorn,* 794 S.W.2d 181,

183–84 (Mo. banc 1990). An appellate court is to reverse the trial court's ruling on a motion to suppress only if that ruling was "clearly erroneous." *Id.* at 183. It may not reverse if the trial court's ruling "is plausible in light of the record viewed in its entirety." *Id.* at 184; *State v. Cook,* 854 S.W.2d 579, 581 (Mo.App.1993). Viewed under these standards, we affirm the trial court's ruling in the instant case.

In its first point, the State contends that the trial court erred in sustaining the motion to suppress "because the officers had a right to be in the bus terminal, a public place; and also had a right to initiate a 'police-citizen encounter.'" Several cases have held that officers are entitled to approach citizens in public places, without the necessity of a reasonable suspicion of criminal activity, to ask them questions and request permission to search their luggage "so long as a reasonable person would understand that he or she could refuse to cooperate." *Florida v. Bostick,* 501 U.S. 429, ——, 111 S.Ct. 2382, 2384, 115 L.Ed.2d 389, 396 (1991); *Florida v. Rodriguez,* 469 U.S. 1, 6–7, 105 S.Ct. 308, 311, 83 L.Ed.2d 165, 171 (1984); *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Such encounters are "consensual" and carry no Fourth Amendment implications. *Florida v. Rodriguez,* 469 U.S. at 5–6, 105 S.Ct. at 311, 83 L.Ed.2d at 170–171. Stated another way, such an encounter does not constitute a seizure so long as a reasonable person would feel free to disregard the police and go about his business or discontinue the encounter. *Florida v. Bostick,* 501 U.S. at ——, 111 S.Ct. at 2386, 115 L.Ed.2d at 398. A person may not be detained even momentarily, however, without reasonable, objective grounds for doing so. *Florida v. Royer,* 460 U.S. at 498, 103 S.Ct. at 1324, 75 L.Ed.2d at 236.

The scope of the issue on appeal is determined by the point relied on. *See State v. Hill,* 812 S.W.2d 204, 208 (Mo.App.1991). The State's first point would convict the trial court of error if the initial encounter between Defendant and the officers was authorized. The fact that such an encounter may be

---

**2.** The State argues in its brief that Arizona was a known source state and that Chicago was a known user area, but no such evidence appears in the record.

lawfully initiated without reasonable suspicion of criminal activity does not mean that it remains non-violative of the Fourth Amendment regardless of subsequent events, as apparently contemplated by the State in its first point. A police-citizen encounter which is consensual in its inception may lose that characteristic later if the officers, by means of physical force or show of authority, in some way convey the message that compliance with their requests is required, in which event a seizure occurs triggering Fourth Amendment scrutiny. *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980). As will be indicated in our discussion of the third point, there was evidence in the instant case from which the trial court could have found that the nature of this encounter changed from consensual to non-consensual. This point as presented by the State is denied.

■ In its second point, the State claims that the trial court erred in suppressing the evidence because, notwithstanding Officer Hicks' opinion that he had no reasonable suspicion of criminal activity, such reasonable suspicion existed and they had a right to "stop" Defendant to ascertain whether he was transporting contraband. The State relies on the principles enunciated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which authorizes an "investigatory stop" if there is a reasonable and articulable suspicion that the person is engaged in criminal activity.

■ In this point, the State apparently seeks to establish trial court error by contending that the entire encounter with Defendant was justified on the basis of reasonable suspicion of criminal activity. Officer Hicks, however, stated that the only "suspicions" he had at the time were based on the fact that Defendant had approximately a day's growth of beard and carried the travel bag with him. He characterized his feelings as a "hunch." A "hunch" or "inchoate and unparticularized suspicion" is insufficient. *Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

The "suspicions" enumerated by Officer Hicks could "describe a very large category of presumably innocent travelers, who would

be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure." *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890, 894 (1980). In the instant case the court indicated, in announcing its ruling, that the fact that Defendant kept the carry-on bag with him did not necessarily indicate a crime was in progress ("it could indicate exactly the opposite, someone trying to avoid a crime"). We are unable to conclude that the trial court was clearly erroneous in failing to find that the officers had a reasonable suspicion of criminal activity justifying their subsequent actions. This point is denied.

■ In its third point, the State contends that the trial court erred in suppressing the evidence because Defendant consented to the search. In announcing its ruling, the trial court mentioned the demeanor of Officer Hicks; said that while the officers had a right to talk to passengers, under the circumstances of the case it did not believe that they had a right to detain Defendant; and it held that the consent to search was not voluntary. The State argues in this point that the trial court's finding that the consent to search was not voluntary was clearly erroneous.

■ A consent to search which is preceded by a Fourth Amendment violation is valid only if it is in fact voluntary. *State v. Riddle*, 843 S.W.2d 385, 387 (Mo.App.1992). To qualify as such, the consent must be sufficiently an act of free will so as to purge the taint of the illegal detention. *Id.* Whether the consent is in fact voluntary is determined by looking at the totality of the circumstances and is an issue upon which the State bears the burden. *Id.* The State does not satisfy its burden of showing that the consent was voluntary by merely showing a submission to a claim of lawful authority. *Florida v. Royer*, 460 U.S. at 497, 103 S.Ct. at 1324, 75 L.Ed.2d at 236.

■ Three factors are to be considered in determining whether consent is in fact voluntary: (1) the temporal proximity of the illegal detention and the consent; (2) any interven-

ing circumstances; and (3) the purpose and flagrancy of the officer's conduct. *Brown v. Illinois,* 422 U.S. 590, 603–604, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416, 427 (1975).

In the instant case, it is obvious that the trial court concluded that the encounter changed from one of a consensual nature to one where Defendant did not feel free to disregard the police and discontinue it, thereby requiring adherence to Fourth Amendment standards. For instance, it is reasonable to interpret the trial court's comments as constituting a finding, based at least partly on the demeanor of Officer Hicks, that he conveyed a message to Defendant that compliance with his requests was required. In *United States v. Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509, the court stated that among the circumstances that might indicate a seizure even where a person had not attempted to leave would be the "use of language or tone of voice indicating that compliance with the officer's request might be compelled."

■ As indicated earlier, a seizure occurs when the liberty of a citizen is somehow restrained. *Florida v. Bostick,* 501 U.S. at ——, 111 S.Ct. at 2386, 115 L.Ed.2d at 398. In reviewing the record in the instant case, we are mindful that the officers had obtained Defendant's claim check for his other luggage and apparently still retained it. This could also have a bearing on a reasonable person's feeling about his freedom to terminate the encounter. In addition, Defendant was not told that he was free to leave, did not have to answer questions, or did not have to consent to the search.[3]

■ The State has the burden of going forward with the evidence and the risk of non-persuasion to show by a preponderance of the evidence that the motion to suppress should be overruled. *State v. Milliorn,* 794 S.W.2d at 184. The trial court may choose to

believe or disbelieve all or any part of the testimony presented by the State, even though it may be uncontradicted, and may find the State failed to meet its burden of proof. *State v. Seidt,* 805 S.W.2d 737, 738 (Mo.App.1991). Based upon this premise and the record before us, we are unable to conclude that the trial court's ruling was clearly erroneous.

The order of the trial court is affirmed.

---

3. While the State need not prove that a defendant who has consented to a search knew that he had the right to withhold his consent, the fact that whether or not he knew that he had a right to refuse can be taken into account in determining whether or not a consent was "voluntary." *Florida v. Rodriguez,* 469 U.S. at 6–7, 105 S.Ct. at 311, 83 L.Ed.2d at 171. Whether or not a person has been informed of his right to discontinue the encounter or not consent to a search has been considered by other courts in determining whether a seizure has occurred or a consent is voluntary. *See Florida v. Bostick,* 501 U.S. at ——, 111 S.Ct. at 2386, 115 L.Ed.2d at 398; *Florida v. Royer,* 460 U.S. at 501–502, 103 S.Ct. at 1326, 75 L.Ed.2d at 239; *United States v. Mendenhall,* 446 U.S. at 548, 100 S.Ct. at 1874, 64 L.Ed.2d at 505.