**STATE of Missouri, Plaintiff–Respondent,**

v.

**Sigifredo GALICIA, Defendant–Appellant.**

**Sigifredo GALICIA, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

Nos. 21933, 19724.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 31, 1998.

Thomas P. Deaton, Springfield, Mo., Robert A. Novell, Sr., Chicago, Ill., for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jill C. LaHue, Asst. Atty. Gen., Jefferson City, for Respondent.

GARRISON, Presiding Judge.

Sigifredo Galicia ("Movant") was convicted by a jury of the Class A felony of trafficking drugs in the second degree, § 195.223,[1] and was sentenced to a thirty year prison term. He appeals that conviction in Case No. 19724.

Movant subsequently filed a motion seeking post-conviction relief pursuant to Rule 29.15 which was later amended by appointed counsel. Movant appeals the denial of those motions, after an evidentiary hearing, in Case No. 21933.

These two cases were consolidated by this court. Movant's brief, however, fails to raise any issue relating to his direct appeal, Case No. 19724, and consequently it is deemed abandoned or waived. *State v. Vivone*, 857 S.W.2d 489, 491 (Mo.App. S.D.1993). *See also State v. Burket*, 893 S.W.2d 390, 393 (Mo.App. S.D.1995); *State v. Castillo*, 853 S.W.2d 381, 383 (Mo.App. E.D.1993).

Movant was traveling from Houston, Texas to Chicago, Illinois on a Greyhound bus which stopped at the bus terminal in Springfield, Missouri. While there, he was approached by two police officers (Detective Deeds and Detective Schrader of the Springfield Police Department) who were assigned to the bus station for the purpose of intercepting drugs being carried by passengers arriving at or traveling through Springfield. According to Movant, he left the bus to use the restroom, and he was approached by the officers while he was returning to the bus with his two bags. Officer Deeds testified that Movant was getting off the bus carrying two bags when he made eye contact with Officer Deeds, who had been searching another passenger's bag. According to Officer Deeds, Movant then turned around abruptly and got back on the bus with the bags. Both officers testified that they approached Movant in the rear of the bus after they saw him place the bags he was carrying in the overhead storage area.

According to Deeds, Movant was told that he was not under arrest and was free to

---

1. All statutory references are to RSMo 1994, and all rule references are to Missouri Rules of Criminal Procedure (1998) unless otherwise indicated.

leave. He was then asked if he minded talking with them. When he agreed to do so, he told the officers that he lived in Chicago, but did not have an answer when asked why he had been to Houston. Although Movant told the officers his name, he was unable to produce any identification. After being told that the officers were looking for people carrying drugs, he was asked if they could search his bags. When he consented to the search, the officers found that one bag contained women's clothing and a package wrapped in Christmas paper and duct tape. Upon opening it, they found what appeared to be cocaine. Movant was then placed under arrest, advised of his rights, and subsequently charged with the offense for which he was convicted and sentenced.

On this appeal from the denial of his Rule 29.15 motions, Movant contends that the motion court clearly erred in denying relief because his trial counsel was ineffective by failing to file a motion to suppress; by permitting the State, without objection, to elicit testimony about his post-arrest silence and request for an attorney; by failing to object to testimony about the street value of the cocaine seized; and by failing to object to testimony about the magnitude of the drug problem in Missouri.

Movant's trial counsel testified at the evidentiary hearing on the Rule 29.15 motions that he had been employed to work out a plea agreement, or if that was not possible, to try the case. His communications were apparently with Movant, as well as Movant's Illinois counsel, who was representing Movant on charges pending in that state. Trial counsel testified that he was requested to obtain a plea agreement that would result in Movant receiving a ten year sentence, to be served concurrently with time he would receive on the pending Illinois case. When he successfully obtained that plea agreement, he said that he was told by Movant and the Illinois attorney that a guilty plea would be entered. According to trial counsel, he did not know until 7:30 A.M. on the morning of trial that Movant would not plead guilty, but instead wanted to proceed to trial. Because of this, trial counsel said that he filed no motions to suppress (which he did not believe would be successful in any event) and had not prepared to go to trial. On the morning of trial he requested, but was denied, a continuance based on his lack of an opportunity to prepare. Trial counsel characterized as trial strategy his failure to object to evidence of Movant's silence and request for an attorney, the street value of the seized cocaine, and the extent of the drug problem in Missouri. His theory was that the prosecutor had an antagonistic style which did not set well with juries, and he hoped to draw a contrast between his style and that of the prosecutor until Movant had a chance to testify and convince the jury of his innocence.

In denying Movant's 29.15 motions, the motion court found that a motion to suppress would have been overruled. It also found that Movant suffered no prejudice from his trial counsel's failure to object to testimony about the street value of the drugs seized or the magnitude of the drug problem in Missouri because the evidence of his guilt was overwhelming, and there was no reasonable probability that the outcome would have been different had the evidence been objected to. Finally, it concluded that trial counsel's decision not to object to questions by the prosecutor, directed to Movant's silence and assertion of his Sixth Amendment right to counsel, was trial strategy.

■ Our review of a denial of a postconviction motion is limited to a determination of whether the motion court's findings of fact and conclusions of law were clearly erroneous. Rule 29.15(k). Findings and conclusions are clearly erroneous only if, after review of the entire record, the court is left with a definite and firm impression that a mistake has been made. *State v. Ray*, 852 S.W.2d 165, 171–72 (Mo.App. S.D.1993).

■ In order to prevail on a claim of ineffective assistance of counsel, a movant must show by a preponderance of the evidence that counsel failed to exercise the customary skill and diligence that a reasonably

competent attorney would have exhibited under similar circumstances and that movant was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A movant must satisfy both the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo.banc 1987). In reviewing the performance prong, Movant must overcome the presumptions that any challenged action was sound trial strategy, that counsel rendered adequate assistance, and that he made all significant decisions in the exercise of professional judgment. *Strickland*, 466 U.S. at 689–90, 104 S.Ct. at 2065. The prejudice prong is not presumed upon a showing of deficient performance, but must be affirmatively proven. *Sidebottom v. State*, 781 S.W.2d 791, 796 (Mo.banc 1989). Prejudice is not proven by showing that trial counsel's errors could have affected the outcome of the trial; rather, there must be proof of a reasonable probability that the result would have been different but for the errors. *Id.*

■ In his first point on appeal, Movant contends that the trial court erred in denying his claim that his trial counsel was ineffective by failing to file a motion to suppress "the illegal arrest and search." The motion court held that the failure to file the motion did not constitute ineffectiveness of counsel for two reasons: (1) the motion would have been overruled, and (2) trial counsel's failure to file the motion was because of Movant's assurances that he was going to accept the plea agreement.

Movant contends, primarily based on this court's opinion in *State v. Talbert*, 873 S.W.2d 321 (Mo.App. S.D.1994), that such a motion would have resulted in the suppression of the cocaine and ultimately dismissal of the

charge against him.[2] *Talbert*, however, is distinguishable from the instant case. While *Talbert* involved a search of luggage by officers at the same bus station as here, the issue was whether the trial court erred in sustaining the defendant's motion to suppress, not whether trial counsel was ineffective by failing to file such a motion. The standard of review was whether the evidence was sufficient to support the trial court's finding. 873 S.W.2d at 323. In affirming the trial court's ruling sustaining the defendant's motion to suppress, we noted that in making such a review, we defer to the trial court's decisions about the credibility of witnesses and the weight to be given the evidence. *Id.* We also noted that it was obvious that the trial court had concluded that the encounter between the officers and the defendant "changed from one of a consensual nature to one where Defendant did not feel free to disregard the police and discontinue it," and that the defendant had not been told that he was free to leave. *Id.* at 325. Our holding in *Talbert* should not be interpreted as meaning that a motion to suppress in the instant case would necessarily have been sustained. We merely held that based on the record in that case, we were unable to conclude that the trial court's ruling was clearly erroneous. *Id.*

At the evidentiary hearing on the 29.15 motions, trial counsel testified that he had not filed a motion to suppress because of the representations of Movant and his Illinois attorney that Movant was going to enter a guilty plea in accordance with the plea bargain which he had arranged. He also testified that, although he was familiar with the *Talbert* opinion, he did not believe that a motion to suppress would have been successful under the facts in this case.

The evidence presented to the motion court in support of the 29.15 motions consist-

---

**2.** Movant also cites *Adams v. State*, 677 S.W.2d 408 (Mo.App. W.D.1984) for the proposition that "a failure to file a motion to suppress in a case where the suppression had merit was held to be ineffective assistance of counsel requiring reversal." *Adams* does not stand for that proposition. There, a motion to suppress was filed but over-

ruled. The appellate court held that trial counsel's failure to object when the evidence was offered at trial, and thereby preserve the issue for appellate review, amounted to ineffective assistance of counsel. That is not the premise upon which this point on appeal is based.

ed of trial counsel's testimony and a letter which he wrote to Movant on October 12, 1992, one year and eight months before the trial. In that letter, trial counsel told Movant of the plea bargain he had obtained from the prosecutor; told him that if he wanted to accept the plea bargain, he should notify him immediately or the offer would be withdrawn; and also told him that he should contact him immediately if he wanted to go to trial. According to trial counsel's testimony, Movant and his Illinois counsel both responded that Movant wanted to accept the plea bargain. It was not until the morning of trial that trial counsel learned that Movant had decided to insist on a trial.[3] Nothing in the record before us contradicts trial counsel's testimony that he was caught by surprise by Movant's last minute decision to demand a trial.

Under the facts of this case, we are unable to conclude that the motion court was clearly erroneous in holding that trial counsel was not ineffective in failing to file a motion to suppress. The first point is denied.

[redacted] In another point, Movant contends that the motion court clearly erred in finding that trial counsel was not ineffective by failing to object to the testimony of Officer Deeds about the street value of the cocaine that was seized. He argues that there was no foundation laid to establish that Officer Deeds was qualified as an expert concerning that subject. Although Movant does not cite us to the portion of the record containing the evidence that he contends was objectionable, our review of the record indicates that Officer Deeds did testify that at the time of the arrest, the street value of one gram of cocaine in Springfield was $100 per gram, and that the cocaine in question weighed over 1000 grams.

Movant cites *State v. Watt,* 884 S.W.2d 413 (Mo.App. E.D.1994), in support of his argument. In *Watt,* however, the reversible error was the testimony of a criminologist about the results of drug tests on substances seized from the defendant. *Id.* There, the testimony was based on results of tests conducted by another person employed in the police lab, and there was no showing of that persons qualifications.

In *State v. Lowrance,* 619 S.W.2d 354, 356 (Mo.App. E.D.1981), the court considered whether the trial court erred in overruling the defendant's objection to testimony about the street value of drugs seized from the defendant. The officer who gave the testimony had both practical and academic training concerning cocaine and had made thirty purchases himself. *Id.* The appellate court noted that the trial court has considerable discretion in determining the qualifications of expert witnesses, and that it had not abused its discretion in that regard. *Id.*

Here, Officer Deeds had been a member of the Springfield Police Department's Narcotics Enforcement Team for four years. He was the first person assigned to the detail attempting to intercept drugs coming through the bus station, and he had been working at that assignment for over two years prior to trial. He testified that they had intercepted large quantities of drugs as a result of their efforts, and indicated that he was familiar with the quality of cocaine commonly found in Springfield.

[redacted] We cannot say with confidence that trial counsel's failure to object to Officer Deeds' testimony indicated that he was ineffective, or that it resulted in prejudice to Movant to the extent that there is a reasonable probability that a different result would have occurred had he done so. Not only does the trial court have considerable discretion in assessing the qualifications of a witness to express an opinion, but even the failure to object to everything objectionable does not demonstrate incompetence. *See State v. Bailey,* 839 S.W.2d 657, 663 (Mo. App. W.D.1992). To justify relief pursuant to a post-conviction motion, a failure to object must have been of such character as to deprive Movant substantially of his right to a

3. No issue is made of the fact that apparently the case was set for trial, not for a plea, the morning Movant informed trial counsel of his decision not to plead guilty.

fair trial. *Schlup v. State*, 771 S.W.2d 895, 900 (Mo.App. W.D.1989). Even if the testimony had been objectionable, we are unable to conclude that Movant's right to a fair trial was substantially interfered with by reason of counsel's failure to object to this testimony. This point is denied.

■ In another point on appeal, Movant contends that the motion court erred in failing to grant relief on his 29.15 motions as a result of his trial counsel's failure to object to testimony from Officer Deeds about the magnitude of the drug problem in Missouri. The testimony referred to was that the officers on assignment at the bus station look at all passengers that come through on the buses; that they have arrested numerous people traveling on the buses who were in possession of large quantities of drugs; and that they have seized drugs both going to other destinations as well as those arriving in Springfield. According to Movant, this testimony highlighted the magnitude of the drug problem and the police efforts to combat it. His conclusion is that this evidence "likely caused the jury to presume that [Movant] was part of that problem and therefore guilty of the offense charged."

Trial counsel testified at the evidentiary hearing that his failure to object to this testimony was intentional and a part of his trial strategy of permitting the jury to hear the testimony in order to feel the "trauma that's going on in that bus station," feel the close scrutiny that was being exercised, and then let his client testify as an innocent, abused person. Regardless of whether this could be characterized as trial strategy, we are unconvinced that there was a reasonable probability that the result of the trial would have been different if counsel had objected to the testimony, even assuming that it was objectionable. This point is without merit and is denied.

■ In Movant's final point on appeal, he contends that the motion court erred by finding that his trial counsel "was not ineffective for allowing, without objection, the state to elicit testimony concerning [his] post[-]*Miranda* invocation of his Fifth Amendment right to silence and to counsel, ..." In support, he refers to the following from the State's direct examination of Officer Deeds:

Q: All right. So what did you do at that point in reference to State's Exhibit No.1, the quantity of white powder?

A: At this time, I felt that there was probably drugs in the bag that belonged to [Movant]. I then advised him of his Miranda rights.

Q: Okay. And for the record, right to counsel, right to remain silent, all of those rights enumerated under Miranda v. Arizona?

A: That's correct.

Q: All right. And you ensure [sic] yourself that he understood those?

A: I asked him if he understood, and he said yes.

Q: Okay. And then what had transpired at that point?

A. I then asked if he would speak to me about it, again asking him. At this time he then hung his head, would not look at me, and told me that he wanted his attorney.

Movant's trial attorney then cross-examined Officer Deeds about whether he had interrogated Movant after taking him to the police station, which was after he had been advised of his *Miranda* rights. The officer answered that he had not because after advising Movant of his rights, he had invoked his right to talk with an attorney.

Movant testified that the bag containing the cocaine did not belong to him, but apparently belonged to someone else, and had mistakenly been taken from the overhead rack by the officers. The prosecutor extensively cross-examined Movant about the fact that he had not made exculpatory statements to the officers telling them that the bag containing the cocaine was not his, and that the other bag belonging to him was missing. This interrogation covers approximately six pages of the transcript, and was without

objection from Movant's trial attorney. Some of it clearly referred to his post-*Miranda* silence. For instance, one question was whether Movant, after being "arrested and processed," contacted law enforcement authorities and told them that his other bag was missing.

In *State v. Stuart*, 456 S.W.2d 19, 22 (Mo. banc 1970), our Supreme Court held that the silence of an accused, who is under arrest and has been advised of his rights, is not admissible against him because he is under no duty to speak. In reversing the conviction in that case, the Court explained:

> Here, by his silence, he failed merely to deny or explain his possession of the property by claiming it as his own when he had an opportunity to do so while under arrest. We now hold that an accused's failure to volunteer an exculpatory statement is not admissible as an admission; that it may not be shown that by his silence he failed to deny or explain while under arrest an incriminating fact as to which no question was asked.... The admission of such evidence constitutes an invasion of an accused's constitutional rights. (citations omitted).

*Id.* In *State v. Antwine*, 743 S.W.2d 51, 69 (Mo.banc 1987) the court distinguished between the use of pre-*Miranda* silence, which may be used for impeachment, and post-*Miranda* silence. Although it held that pre-*Miranda* silence may be used for impeachment, it construed *Stuart* as standing for the proposition that post-*Miranda* silence may not. *Id.*

In *State v. Flynn*, 875 S.W.2d 931, 934 (Mo.App. S.D.1994), a case where a defendant had been arrested and advised of his rights, this court held that the right to be free from compulsory self-incrimination embraces not only the right to remain silent, but also that such silence shall not be allowed to prove guilt. We explained that "[t]he State may not use post-arrest silence either as affirmative proof of the defendant's guilt

or to impeach his testimony." *Id.* In *State v. Wilder*, 955 S.W.2d 229, 230 (Mo.App. E.D. 1997), it was held that a knowing misuse of a defendant's post-*Miranda* silence constituted a denial of a fair trial.

Several similarities exist between this case and the *Flynn* case. There, as here, the matters of post-*Miranda* silence were deliberately elicited instead of being volunteered by a witness. 875 S.W.2d at 936. Likewise, as in *Flynn*, Movant was confronted with an incriminatory fact, the bag containing cocaine; he was arrested as a result of that discovery; the prosecutor drew attention to his post-*Miranda* silence in the direct examination of the officer and in the cross-examination of Movant; [4] and Movant provided an explanation to establish his innocence which was rejected by the jury. In *Flynn*, we said "[a]lthough that explanation 'may tax credulity,' the State had no right to comment on Appellant's exercise of his constitutional right to remain silent." *Id.* We concluded in *Flynn* that the appellant was entitled to a reversal under the plain error rule.

In the instant case, contrary to our holding in *Flynn*, the State established affirmatively through Officer Deeds that after being arrested and advised of his rights, Movant made no statement, hung his head, and said he wanted his attorney. Thereafter, the State cross-examined Movant, using his failure to make exculpatory statements to impeach his testimony that the bag containing the drugs was not his. None of this was objected to by Movant's trial counsel.

The significance of the State's use of a defendant's post-*Miranda* silence is highlighted by the fact that it has been acknowledged that it may constitute plain error amounting to a manifest injustice or a miscarriage of justice. *State v. Zindel*, 918 S.W.2d 239, 241 (Mo.banc 1996). In finding plain error and reversing the conviction in that case, the *Zindel* Court said:

> Considering the admission of [defendant's] post-*Miranda* silence was a constitutional

---

4. Unlike *Flynn* we do not know what use was made of Movant's silence during the State's clos-

ing argument because that portion of the record was not provided with the record on appeal.

violation, that the evidence pertained to the central issue in the case, and that the prosecutor repeatedly drove home the evidence in an effort to sway the jury, we conclude that manifest injustice occurred.

*Id.* at 243.

Of course, here the question is presented in the context of a post-conviction motion in which our inquiry is whether trial counsel was impermissibly ineffective in his representation, and whether Movant was thereby prejudiced. Movant's trial counsel testified at the Rule 29.15 hearing that his failure to object to this type of evidence was the result of a trial strategy by which he hoped to develop sympathy for Movant, and to contrast his style with that of the prosecutor who he believed offended juries. His "strategy" included a desire to avoid the appearance of being obstructive by not objecting.

A review of the record, however, indicates that Movant's trial counsel did object during Officer Schrader's testimony when he thought the officer was volunteering information beyond the scope of the questions. He indicated, in a speaking objection, that based on other experiences with the officer, he tended to volunteer information. When asked to state his objection, trial counsel said, "I would ask the Court to direct Officer Schrader, for once in his life, just to answer the question as it's asked, and then when they want him to say something else, they can ask him another question." On another occasion, trial counsel objected to one of the prosecutor's questions, complaining that it contained an inference that Movant had been reluctant in his testimony, and in which he said "... I resent the inference. I would ask the Court to direct the State to stop doing that. There was no reluctance in our response to their question this morning." It is difficult for us to categorize trial counsel's failure to object to questions which are in violation of Movant's constitutional rights as trial strategy, when he did object to questions or comments with less legal significance to Movant's rights. Certainly, this is inconsistent with an alleged trial strategy to avoid

objecting in an effort to seem non-obstructive.

The mere assertion that conduct of trial counsel was "trial strategy" is not sufficient to preclude a movant from obtaining post-conviction relief based on a claim of ineffective assistance of trial counsel. *State v. Hamilton,* 871 S.W.2d 31, 34 (Mo.App. W.D.1993). For "trial strategy" to be the basis for denying post-conviction relief, the strategy must be reasonable. *Id.*

In *Zindel* the issue was whether the use of post-*Miranda* silence was reversible error in spite of the fact that the review was for plain error as a result of the trial attorney's failure to object at trial. In contending that it should not be considered as plain error, the State argued that the failure to object may have been part of defendant's trial strategy. 918 S.W.2d at 244. The Missouri Supreme Court rejected that argument, saying:

"In this case, it is impossible to perceive any strategic reason why defense counsel would allow a prosecutor to admit and repeatedly refer to this damaging evidence, knowing that the evidence was constitutionally prohibited."

*Id.* We do not believe that Movant's claim to post-conviction relief can, therefore, be denied merely on the basis of his trial counsel's claim that the failure to object to this evidence was a matter of trial strategy. Rather, we conclude that this failure, under the circumstances of this case, satisfies the performance prong of the *Strickland* test.

To be entitled to relief, however, Movant must also demonstrate that he was prejudiced as a result of his trial counsel's errors. To do so he must demonstrate a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. *Leisure v. State,* 828 S.W.2d 872, 875 (Mo.banc 1992), *cert denied,* 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). As we said in *State v. Bearden,* 926 S.W.2d 483, 486 (Mo.App. S.D.1996), "the failure to object must have been of such character as to deprive the defendant substantially of his right to a fair trial."

Here, the trial court denied Movant's claim that his trial counsel had been ineffective in failing to object to the use of his post-*Miranda* silence and assertion of his right to counsel, by finding that it constituted permissible trial strategy. We hold that such holding was clearly erroneous. The motion court, however, did not consider the second prong of the test, i.e., whether Movant was prejudiced in the manner required by such cases as *Leisure v. State*, 828 S.W.2d at 874. To the extent that the motion court denied this portion of Movant's 29.15 motions, we reverse that ruling and remand the case to the motion court for further proceedings, which may, in the court's discretion, include an additional evidentiary hearing for the purpose of determining if Movant was prejudiced by his trial counsel's failure to object to references to his post-*Miranda* silence and the exercise of his right to counsel.

In all other respects, the motion court's order is affirmed. Movant's direct appeal from the judgment entered on the jury verdict and the sentence imposed is denied as having been waived or abandoned.

PREWITT and CROW, JJ., concur.