**STATE of Missouri, Respondent,**

v.

**Jeffrey J. THOMAS, Appellant.**

No. 74339.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 9, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 5, 1999.

Isidore I. Lamke, Washington, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gregory L. Barnes, Asst. Atty. Gen., Jefferson City, for respondent.

RICHARD B. TEITELMAN, Judge

Jeffrey Thomas, Defendant, appeals from his convictions in a court-tried case on two counts of possession of controlled substances with intent to distribute, in violation of Section 195.211 RSMo 1994. He was sentenced to terms of five years imprisonment on each count, to be served concurrently.

Defendant's Jeep vehicle, with Defendant and three other occupants in it, was spotted by a patrol officer at 1:18 in the morning, with its motor running and lights off, parked behind a strip mall shopping center in an area generally not utilized by the public and where there had been multiple past reports of property damage and vandalism. After getting out of his patrol car the officer approached the vehicle on foot and asked the occupants what they were doing. Defendant replied that they were talking about going to a party. The officer asked the occupants for their driver's licenses, which they gave him. He went back to his patrol car, ran a computer check, determined that there were no outstanding warrants for any of the vehicle occupants, checked the vehicle registration and found Defendant was the owner, then

returned the licenses to the other occupants except for Defendant. Instead, the officer had Defendant exit his vehicle and walk back 12 to 15 feet with him towards the patrol car, where the officer asked Defendant for his consent to search Defendant's vehicle. Defendant gave his oral consent. The officer then searched the vehicle, finding some marijuana, drug paraphernalia, and a psilocybin mushroom. Defendant was arrested and taken to the police station, where he was advised of his *Miranda*[1] rights, executed a written waiver of those rights, and proceeded to make a statement in which he confessed that he had been selling some of the drugs around the Washington, Missouri area for the past few weeks.

Defendant filed a motion to suppress the seized evidence as well as Defendant's post-arrest statements, claiming that they resulted from an illegal search and seizure in violation of his Fourth Amendment rights. After a hearing the court denied the motion.

On appeal, Defendant contends that the trial court erred in denying his motion to suppress. Although he concedes that the initial brief investigatory stop of the vehicle and its occupants was a valid *Terry* stop,[2] Defendant argues that his further detention became unlawful once it extended beyond the time in which the police officer accomplished his "initial purpose" of identifying the occupants of the vehicle and determining that they did not need any assistance, because during the period of the lawful detention the officer discovered no new factual predicate for reasonable suspicion that criminal activity was afoot, citing *State v. Stevens*, 845 S.W.2d 124, 128 (Mo.App. E.D.1993). Thus, Defendant argues, both the search and subsequent confession were inadmissible as fruit of the poisonous tree, and were not sufficiently attenuated from the prior illegal detention to purge the taint of that illegality, citing *State v. Miller*, 894 S.W.2d 649, 655–56 (Mo. banc 1995).

■ We have reviewed the briefs of the parties, the legal file and transcript, and find this claim of error to be without merit. Under the appropriate standard of review, we view the facts and all reasonable inferences to be drawn therefrom in the light most favorable to the trial court's ruling, and review the findings only to see if they are supported by substantial evidence. *Stevens*, 845 S.W.2d at 128; *State v. Talbert*, 873 S.W.2d 321, 323 (Mo.App. S.D.1994). We may not reverse if the trial court's ruling is "plausible in light of the record viewed in its entirety;" and this is true even where we believe we would have weighed the evidence differently if we had been sitting as the trial court. *Id.* Although Defendant argues that the officer's police report and his testimony at the motion to suppress hearing indicate that his "sole" purpose in making the stop was merely to ascertain the identities of the vehicle occupants and see if they needed any help, careful review of the record persuades us that that is not precisely what the officer stated, and further that there was other testimony of the officer from which the trial court could have reasonably concluded that part of his purpose was in fact to investigate whether the occupants of the vehicle were involved in the type of vandalism activity that had previously occurred in the area. The officer never testified that seeing who the vehicle occupants were and whether they needed any help was the sole reason for conducting the *Terry* stop; rather, he testified at one point that that was why he first *approached the vehicle.*[3] It therefore is entirely possible that the officer became more suspicious after this encounter first began, when the four occupants failed to give a plausible explanation in response to his question asking them what they were doing there. If the results of an initial lawful encounter arouse further and reasonable suspicion in a police officer's mind, then he is entitled to conduct a *Terry* stop when the objective facts and circumstances of the situation appear to

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

3. Strictly speaking, the *Terry* "stop" did not begin until the officer told the vehicle occupants that he would have to check their drivers license ID's; prior to that point in time the occupants were not detained, even briefly, and hence the interaction was simply an "encounter" short of a stop. *State v.Talbert*, 873 S.W.2d at 323.

warrant it. Courts have repeatedly held that the kind of situation the officer in this case encountered does present reasonable suspicion to support such a *Terry* stop; see 4 Lafave, *Search and Seizure* § 9.4(d), n. 133 (3rd ed.1996). Additionally, the officer also testified that the reason why he wanted to request Defendant's consent to search the vehicle was because he suspected the occupants were involved in the type of vandalism activity which had occurred in that area and which he personally had taken reports on. If that was part of the officer's purpose in conducting the stop then, obviously, his lawful purpose had not yet expired prior to the time he requested Defendant's consent to search the vehicle.

Thus, the trial court here had an ample basis for its implicit finding that the consent search was not the product of an illegal seizure or detention. The record also supports a finding that Defendant's consent to search the vehicle was not involuntary. The judgment is affirmed.

JAMES R. DOWD, P.J. and LAWRENCE G. CRAHAN, J., concur.