

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,      )
     )
     Plaintiff-Respondent,      )
     )
vs.      )      No. SD37796
     )
EDWARD DENNIS RODGERS,      )      **Filed: June 7, 2024**
     )
     Defendant-Appellant.      )

### APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

The Honorable Michael M. Pritchett, Judge

### <u>AFFIRMED</u>

Edward Dennis Rodgers appeals the judgment of the Circuit Court of Butler County ("trial court") convicting him of one count of unlawful possession of a firearm following a jury trial. *See* section 571.070.[1] Raising four points on appeal, Rodgers claims the trial court plainly erred by: failing to instruct the jury on self-defense as to unlawful possession of a firearm (Point I); failing to instruct the jury on the defense of justification by necessity as to unlawful possession of a firearm (Point II); sustaining the State's objection and denying Rodgers's offer of proof regarding the testimony of an inmate who heard J.P.L. ("Victim") admit he had a weapon (Point III); and permitting the

---

[1] All references to statutes are to RSMo Cum. Supp. 2020, unless otherwise indicated.

State to elicit from another witness that Rodgers failed to say he was acting in self-defense when arrested (Point IV). We decline to review any of these points for plain error because Rodgers has not facially established substantial grounds for believing manifest injustice or miscarriage of justice occurred as a result of any trial court error. As a result, the trial court's judgment is affirmed.

## Factual Background and Procedural History

Around September 20, 2020, Rodgers began living with his ex-girlfriend, J.S. ("Girlfriend"), at her house. Throughout his stay, there were a couple of times when Rodgers and Girlfriend would argue, and Rodgers would leave "for no more than two days" before they made up. Sometime towards the end of October of 2020, Rodgers and Girlfriend argued, he left the house, and he returned a week before November 13, 2020. When he came back, Rodgers and Girlfriend agreed to get married and to stop using drugs.

Rodgers got up for work and left the house on the morning of November 13, 2020. As Girlfriend described it, Rodgers's duffle bag and other "things were [still] parked" in her bedroom that day from when he came back the prior week. When Rodgers came back to the residence at lunch time, Girlfriend was sitting at the kitchen table with a mad look on her face; and when Rodgers went into the bedroom he saw a spoon, lighter, syringes, and other paraphernalia on the dresser. Rodgers then began packing his bag to leave again. He told Girlfriend to get his shirts from the dryer, and she said "oh, F-U." Rodgers responded by shoving Girlfriend on the shoulder and putting his hand on her throat.

2

Girlfriend went outside to Victim's shop, where he was working on a car, and asked Victim to help tell Rodgers to leave. Rodgers followed Girlfriend, begging her not to get Victim because he had a "bad feeling," but Rodgers did not go all the way to the shop with Girlfriend. He dropped back and saw Victim step out of the shop. After seeing Victim go back into the shop, Rodgers retreated back to the house and started packing his bag again.

According to Rodgers, Victim came into the house with a pistol in his hand and started jumping around "like [he was] in some kind of octagon[.]" Rodgers picked up a 0.22 rifle from Girlfriend's bed, stood in the bedroom doorway, and asked Victim to leave. Victim raised his gun, and Rodgers shot Victim just below his lip. Rodgers shot the rifle again but missed, and Victim turned away and left the house.

A Butler County Sheriff's Office deputy found Victim lying at the top of a staircase on the second floor of an apartment building across the road from Girlfriend's residence. Victim was holding a rag to his mouth and was bleeding severely. Law enforcement also found two 0.22 shell casings in Girlfriend's house and recovered a ratchet in the front yard, but they found no weapon at the scene. An investigator with the Butler County Sheriff's Office, Eddie Holloway, obtained video footage from a neighbor's camera, which showed Victim carrying the ratchet found at the scene while running from Girlfriend's house to the apartment where he was found.

Law enforcement later stopped Rodgers in a pickup truck and administered a gunshot residue kit on Rodgers during the traffic stop. The gunshot residue kit found particles characteristic of gunshot residue, as did a separate examination of Rodgers's clothing after he was arrested and booked.

3

The State charged Rodgers with one count of assault in the first degree for causing serious physical injury to Victim (Count I), armed criminal action by committing the offense of assault in the first degree through the assistance and aid of a deadly weapon (Count II), unlawful use of a weapon (Count III), armed criminal action by committing the offense of unlawful use of a weapon through the assistance and aid of a deadly weapon (Count IV), and unlawful possession of a firearm (Count V). His case proceeded to a jury trial on September 7, 2022.

At the beginning of trial and without objection, the trial court accepted two exhibits documenting Rodgers's previous guilty pleas in Butler County: one for felonious restraint in 2001 and another for assault in the second degree in 2010, both resulting in felony convictions. Girlfriend testified at trial she did not know where the 0.22 rifle came from and that Victim did not have a gun. Rodgers testified that he stood his ground in self-defense when Victim raised his gun. Rodgers also claimed he did not bring the rifle into the house on the day of the shooting. In his words, the rifle was just on the bed "for some reason[,]" and Rodgers "figured" it belonged to Girlfriend's brother. Rodgers acknowledged he previously pled guilty to receiving stolen property, DWI, misdemeanor stealing, a misdemeanor drug offense, felonious restraint, felonious nonsupport, possession of a controlled substance, domestic assault, and possession of a firearm in a federal case; and he further acknowledged that, as a convicted felon, he was not authorized to possess a firearm.

The jury found Rodgers not guilty on Counts I through IV but guilty of unlawful possession of a firearm on Count V, and this appeal followed. Additional facts will be included below as we address Rodgers's points on appeal.

4

**Standard of Review**

Rodgers acknowledges he failed to preserve his claims of error in all his points relied on and requests plain error review. Plain error review is discretionary under Rule 30.20.[2] ***State v. Perkins***, 640 S.W.3d 498, 501 (Mo. App. S.D. 2022). We may review an unpreserved claim when the claimed error "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." ***State v. Brandolese***, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting ***State v. Clay***, 533 S.W.3d 710, 714 (Mo. banc 2017)). "If plain error is found, the Court proceeds to the second step to consider whether the error actually resulted in manifest injustice or a miscarriage of justice." ***State v. Christian***, 585 S.W.3d 403, 407 (Mo. App. S.D. 2019). Conversely, if there is no facial showing of manifest injustice or miscarriage of justice, appellate courts should decline to exercise plain error review. ***Brandolese***, 601 S.W.3d at 526. An alleged error must be evident, obvious, and clear; and must also be outcome determinative. ***State v. Minor***, 648 S.W.3d 721, 731 (Mo. banc 2022).

When a defendant specifically alleges plain error based on a trial court's jury instructions, the defendant "must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict." ***State v. Stuckley***, 573 S.W.3d 766, 768 (Mo. App. S.D. 2019) (quoting ***State v. Celis-Garcia***, 344 S.W.3d 150, 154 (Mo. banc 2011)). "Even clear and obvious instructional error rarely works a manifest injustice or miscarriage of justice demanding plain-error reversal." ***Id.*** Similarly, an alleged evidentiary error must have had a "decisive effect on the jury's determination" to

---

[2] All rule references are to Missouri Court Rules (2024), unless otherwise indicated.

amount to reversible, plain error. **State v. Ashcraft**, 530 S.W.3d 579, 587 (Mo. App. E.D. 2017).

**Analysis**

**Points I and II – Plain Error Review is Not Warranted for the Trial Court's Alleged Instructional Errors**

Rodgers's Point I and Point II both relate to his claim the trial court plainly erred by failing to give self-defense instructions as to Count V, unlawful possession of a firearm. Because Rodgers has not facially established substantial grounds for believing manifest injustice resulted from any instructional error, we decline to review these points for plain error and deny them both.

Additional Facts Pertinent to Points I and II

Following the close of all evidence at trial, the parties held an instruction conference before the trial court. The defense proposed that the trial court submit to the jury Instruction 406.06 regarding Use of Physical Force in Self-Defense and Instruction 406.10 regarding Use of Physical Force in Self-Defense While in a Dwelling, Residence, or Vehicle.[3] The trial court accepted both self-defense instructions, assigning them to be Instruction No. 10 and Instruction No. 11, respectively. Instruction No. 10 stated, "One of the issues as to Counts 1 and 3 [(assault in the first degree and unlawful use of a weapon)] is whether the use of physical force by [Rodgers] against [Victim] was lawful." Instruction No. 11 similarly stated, "One of the issues as to Counts 1 and 3 is whether the

---

[3] The trial transcript reflects that the defense requested the use of Instruction "406.46[.]" Because no such instruction exists, we understand this reference to be a typographical error in the trial transcript, and no party has alleged otherwise. All references to jury instructions are to Missouri Approved Instructions – Criminal 4th (effective July 1, 2018), unless otherwise indicated.

6

use of physical force, including deadly force, by [Rodgers] against [Victim] was lawful." Both instructions explained the law on self-defense and informed the jury it could not find Rodgers guilty of Counts I and III unless it found Rodgers did not act in lawful self-defense beyond a reasonable doubt. Any conviction for armed criminal action on Count II or Count IV was in turn dependent on a guilty verdict on Count I or Count III, respectively. The defense did not request a self-defense instruction for Count V, the unlawful possession of a firearm charge, nor did the trial court submit such an instruction.

The trial court submitted the compiled instructions to the jury, and the parties then presented their closing arguments. Addressing Rodgers's claim of self-defense, the State argued Rodgers "does not get self-defense because he conjures in his mind and lies to you about the victim having a gun." The defense responded in its closing argument by focusing on the nature of self-defense and maintained, "that's why you must find him not guilty on all counts."

Rodgers has not Facially Established Substantial Grounds for Believing the Trial Court's Failure to Instruct on Self-Defense or the Defense of Justification by Necessity Affected the Jury's Verdict Such that Manifest Injustice Resulted

"The right of self-defense is a person's privilege to defend himself [or herself] against personal attack" and can include deadly force in certain circumstances. *State v. Chambers*, 671 S.W.2d 781, 783 (Mo. banc 1984); *see also* section 563.031, RSMo 2016. The defense of justification by necessity, as codified in section 563.026, provides that "otherwise criminal conduct is 'justified' when 1) it is necessary as an emergency measure 2) to avoid an imminent public or private injury 3) that is about to occur through no fault of the defendant and 4) it is objectively reasonable in light of the injury to be avoided." *State v. Hurst*, 663 S.W.3d 470, 473-74 (Mo. banc 2023). Both defenses are

7

interrelated in that the circumstances justifying self-defense may also justify an emergency measure made to avoid imminent injury. *See **State v. Pool***, 674 S.W.3d 173, 184 (Mo. App. E.D. 2023) (finding a self-defense argument related to and dispositive of a defendant's emergency justification claim).

Rodgers argues in Point I that the trial court plainly erred by failing to instruct the jury on self-defense as to Count V, unlawful possession of a firearm. He similarly argues in Point II that the trial court committed plain error by failing to instruct the jury on the defense of justification by necessity as to the same count.[4] However, rather than demonstrating how the "the trial court so misdirected or failed to instruct the jury [such] that the error affected the jury's verdict[,]" Rodgers devotes the majority of the argument section of his brief to arguing the trial court should have given a self-defense and defense of justification instruction for Count V as if both claims were preserved for appeal. ***Stuckley***, 573 S.W.3d at 768 (quoting ***Celis-Garcia***, 344 S.W.3d at 154). This approach does not meet the higher standard for showing instructional, plain error. *See **State v.***

---

[4] Relying on ***State v. Johnson***, 284 S.W.3d 561 (Mo. banc 2009), the State claims, "Affirmatively acquiescing to an action by the trial court waives even plain error review[,]" and from this position argues Rodgers waived any claim of plain error review in Point I and Point II because the defense stated it had no objection to the verdict director for Count V. The State misreads ***Johnson***. It held that plain error review is not available for claims of error when "a party affirmatively states that it has no objection *to evidence* an opposing party is attempting to introduce[.]" ***Id.*** at 582 (emphasis added) (quoting ***State v. Mead***, 105 S.W.3d 552, 556 (Mo. App. W.D. 2003)). ***Johnson*** addressed waiver in the context of an evidentiary claim of error and did not proclaim that acquiescence to any trial court action, without exception, waives plain error review. To the contrary, "Missouri caselaw is clear that a defendant's affirmative statement of 'no objection' to a jury instruction proposed by the State does not waive plain error review" for claims of instructional error. ***State v. Jones***, 686 S.W.3d 293, 302 (Mo. App. E.D. 2024).

*Ralston*, 400 S.W.3d 511, 520 (Mo. App. S.D. 2013) ("A claim of plain error places a much greater burden on a defendant than an assertion of prejudicial error." (quoting *State v. Dean*, 382 S.W.3d 218, 223-24 (Mo. App. S.D. 2012)). Even if the trial court committed an instructional error, that alone does not equate to reversible, plain error.[5] *See **State v. Rost***, 429 S.W.3d 444, 450 (Mo. App. S.D. 2014) ("Assuming *arguendo* that the trial court erred in modifying the [self-defense] instruction, the error did not so misdirect or fail to instruct the jury that the error affected the jury's verdict resulting in manifest injustice or miscarriage of justice.").

Focusing on what Rodgers must present under plain error review, manifest injustice, he does contend the jury "clearly" would have acquitted him of unlawful possession of a firearm had it been properly instructed, just as it acquitted him of the other charged offenses. However, it is not clear the jury would have acquitted Rodgers of unlawful possession of a firearm under a theory of self-defense or defense of justification by necessity. Presupposing that Rodgers was entitled to a jury instruction on either defense, a result we do not reach, the jury nonetheless heard evidence indicating Rodgers unlawfully possessed a firearm before his altercation with Victim.

Section 571.070 provides that one commits the offense of unlawful possession of a firearm when he or she "knowingly has any firearm in his or her possession and" such person has been convicted of a state felony or a federal crime which would be a felony if

---

[5] Rodgers's briefing for Point II is additionally deficient in that he incorporates his argument from Point I "by reference" to explain why he was entitled to defend himself from Victim. The use of incorporation by reference is insufficient for the argument section of a brief. *In re Marriage of Blanchard*, 613 S.W.3d 879, 887 n.10 (Mo. App. S.D. 2020); *Sugar Ridge Properties v. Merrell*, 489 S.W.3d 860, 873 n.8 (Mo. App. S.D. 2016).

committed in this state. Section 571.070.1(1). Following this statute, the verdict director for Count V asked the jury to consider 1) whether Rodgers possessed a 0.22 rifle on November 13, 2020, and 2) whether Rodgers was previously convicted of a felony in Butler County. Rodgers's prior felony convictions in Butler County are not in dispute, and Girlfriend testified she did not know where the 0.22 rifle came from but that Rodgers put his duffle bag and other belongings in her bedroom a week before. It was from this same bedroom that Rodgers later emerged with the rifle. Weighing the credibility of the witness testimony, the jury was free to disbelieve Rodgers's claim that he did not bring the rifle into the house and that it must have been Girlfriend's brother's rifle, and from that determination conclude Rodgers unlawfully possessed a firearm *before* he was justified in exercising self-defense or physical force as an emergency measure. *See **State v. Hayes***, 15 S.W.3d 779, 782 (Mo. App. S.D. 2000) ("A jury may believe or disbelieve all, *part*, or none of the testimony of any witness.") (emphasis added) (quoting ***State v. Robinson***, 982 S.W.2d 747, 748 (Mo. App. E.D. 1998)).

Because the jury could find Rodgers unlawfully possessed a firearm notwithstanding any justifiable self-defense or emergency measure, Rodgers has not "facially establish[ed] substantial grounds for believing that manifest injustice or miscarriage of justice [] resulted" from the lack of a self-defense or defense of justification by necessity instruction regarding Count V. ***Brandolese***, 601 S.W.3d at 526 (quoting ***Clay***, 533 S.W.3d at 714); *see also **State v. Bax***, 459 S.W.3d 493, 497 (Mo. App. W.D. 2015) (holding a trial court's instructional error was not plain error because it "did not affect the verdict"). We decline to review Points I and II for plain error.

**Points III and IV – Plain Error Review is Not Warranted for the Trial Court's Alleged Error in Excluding Witness Testimony and in Failing to Intervene *Sua Sponte* When the State Questioned a Law Enforcement Officer about Rodgers's Post-Arrest Silence**

Rodgers's argument in Point III arises from the trial court sustaining the State's objection and excluding certain testimony about statements made by Victim. Rodgers's fourth and final point pertains to the testimony of Investigator Holloway who testified that Rodgers failed to say he acted in self-defense when arrested. Rodgers has again not presented a facial claim for manifest injustice in either point, and we therefore decline to review Points III and IV for plain error.

Additional Facts Pertinent to Points III and IV

Before trial, the trial court addressed the State's objection to the testimony of P.M.B. ("Inmate"), an inmate in the Department of Corrections and Victim's acquaintance. The defense presented Inmate's testimony through an offer of proof, and Inmate testified he and Victim were residing together in the Butler County Jail when Victim tried to explain what happened in Rodgers's case. According to Inmate, Victim did not say he was armed when he spoke to Rodgers, but Victim said "he went back and retrieved his piece" after he got out of the hospital.

The State argued Inmate's testimony as to what he heard from Victim was hearsay and should not be allowed at trial. The defense maintained Inmate should be permitted to testify at trial because there was sufficient indicia his testimony was reliable, and Victim's statements, conveyed through Inmate, were supportive of Rodgers's self-defense claim in that Victim admitted he had a "piece," which indicated a weapon of some kind. The trial court sustained the State's objection and directed the parties not to

reference Inmate's testimony during opening statements. The trial court later overruled Rodgers's request to allow Inmate to testify when Rodgers renewed that request at trial.

Also at trial, Investigator Holloway testified to what occurred after advising Rodgers of his *Miranda*[6] rights. Investigator Holloway said Rodgers stated he wanted to talk to his lawyer, and the State asked, "[Rodgers] didn't tell you that he had been defending himself?" Investigator Holloway replied, without objection from the defense, "No, sir."

<u>Rodgers has not Facially Established Substantial Grounds for Believing Manifest Injustice Resulted from the Exclusion of Inmate's Testimony or the Admission of Investigator Holloway's Testimony</u>

Rodgers argues in Point III that the trial court plainly erred in sustaining the State's objection and by denying the defense's offer of proof regarding Inmate's testimony because the exclusion of Inmate's testimony violated Rodgers's right to present a defense. According to Rodgers, Victim's statement to Inmate was an admission Victim had a weapon and was an initial aggressor. In Point IV, Rodgers argues the trial court again plainly erred by permitting the State to elicit from Investigator Holloway that Rodgers failed to say he was acting in self-defense. We decline to review these points for plain error because Rodgers has not facially established substantial grounds for believing manifest injustice resulted from either claimed error.

Arguing a claim of error under substantive law as if it is preserved is insufficient to facially show the manifest injustice or miscarriage of justice required under plain error review. *See* **State v. Jackson**, 681 S.W.3d 248, 260 (Mo. App. S.D. 2023) (declining plain error review where a defendant evaluated the claimed errors for prejudice and not

---

[6] **Miranda v. Arizona**, 384 U.S. 436 (1966).

12

manifest injustice). Here, despite admitting he failed to preserve his claim of error in Point III by including the issue in his motion for new trial and despite seeking plain error review, Rodgers evaluates the admissibility of Inmate's testimony as a declaration against penal interest under *Chambers v. Mississippi*, 410 U.S. 284 (1973), and claims he was "prejudiced[,]" without any discussion of manifest injustice. This briefing provides no basis for believing manifest injustice occurred. *See Brandolese*, 601 S.W.3d at 531 ("All prejudicial error, however, is not plain error . . . .") (quoting *State v. Baumruk*, 280 S.W.3d 600, 608 (Mo. banc 2009)).

Rodgers's argument in Point IV at least relies on *State v. Zindel*, 918 S.W.2d 239 (Mo. banc 1996), and *State v. Flynn*, 875 S.W.2d 931 (Mo. App. S.D. 1994), two cases which found plain error from a trial court's failure to intervene when the State referenced a defendant's post-arrest silence, but these cases are inapposite comparisons to Rodgers's trial. Both *Zindel* and *Flynn* found manifest injustice resulted because the State repeatedly highlighted the defendant's silence through questioning witnesses and statements made to the jury. 918 S.W.2d at 243-44; 875 S.W.2d at 935-36. Unlike those cases, Rodgers has not shown the State emphasized his post-arrest silence beyond the single question directed to Investigator Holloway, and the record does not indicate the State made any such emphasis.

Further, Rodgers fails to explain how Inmate's or Investigator Holloway's testimony had a decisive effect on Rodgers's conviction for unlawful possession of a firearm: the only crime at issue on appeal. *See Ashcraft*, 530 S.W.3d at 587 ("Plain-error review requires that the alleged evidentiary error have a decisive effect on the jury's determination."). Inmate's testimony would have seemingly bolstered Rodgers's self-

defense claim, but, as previously explained, the jury could still find Rodgers unlawfully possessed a firearm even if Rodgers later acted in justifiable self-defense. Likewise, it is unclear how Investigator Holloway's testimony about Rodgers's failure to offer an exculpatory statement played any role in jury deliberations given that the jury presumably believed Rodgers's self-defense claim when it acquitted him on Counts I through IV. Even if Investigator Holloway's testimony undercut Rodgers's self-defense claim, self-defense would be no defense to unlawful possession of firearm in light of the evidence Rodgers possessed the 0.22 rifle before the encounter with Victim. *See **State v. Richard***, 298 S.W.3d 529, 533 (Mo. banc 2009) (noting that possessing a handgun did not necessarily put self-defense at issue); *see also **State v. Harding***, 528 S.W.3d 362, 379-80 (Mo. App. E.D. 2017) (holding a trial court did not err in refusing an emergency justification defense instruction for unlawful possession of a firearm where the defendant possessed a pistol before the alleged justifying emergency occurred).

Because Rodgers has not met his burden of demonstrating manifest injustice, "we decline plain error review." ***Jackson***, 681 S.W.3d at 260.

## **Conclusion**

We decline to review Points I, II, III, and IV for plain error because Rodgers has not facially established substantial grounds for believing manifest injustice resulted from any claimed error. The trial court's judgment is affirmed.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS

14